Ida M. Gates, Respondent, v. The New York Recorder Company, Appellant.

Libel — Publication Libelous per se. The statement concerning a woman that she "is said to have been a concert-hall singer and dancer at Coney Island" is libelous *per se*, when published in a newspaper circulating in the community where the character of Coney Island concert halls is well known.

Gates v. N. Y. Recorder Co., 83 Hun, 614, affirmed.

(Submitted February 3, 1898; decided March 1, 1898.)

Appeal from a judgment of the late General Term of the Supreme Court in the second judicial department, entered January 23, 1895, affirming a judgment in favor of plaintiff

entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Burnett, Stayton & Hagen* for appellant.   The complaint should have been dismissed because it did not state facts sufficient to constitute a cause of action for the reason that, as matter of law, the article was not a libel upon the plaintiff. (*Stone* v. *Cooper*, 2 Den. 293.)   The complaint should have been dismissed, for the reason that the article is not libelous *per se*, and no special damage was alleged or proved. (Townshend on Sland. & Lib. §§ 146, 149; *Marks* v. *R. R. Co.*, 146 N. Y. 181; *Stone* v. *Cooper*, 2 Den. 299; *Miller* v. *Maxwell*, 16 Wend. 9; *Pollard* v. *Lyon*, 91 U. S. 225; *Woodruff* v. *Bradstreet Co.*, 116 N. Y. 217; *Van Tassel* v. *Capron*, 1 Den. 250; *Kinney* v. *Nash*, 3 N. Y. 177; *Purdy* v. *R. P. Co.*, 96 N. Y. 372; *Caldwell* v. *Raymond*, 2 Abb. Pr. 193.) There was absolutely no proof of publication, and the motion to dismiss upon that ground should have been granted. (Townshend on Slander & Lib. § 352; Code Civ. Pro. § 507; *Bruce* v. *Burr*, 67 N. Y. 237; *Goodwin* v. *Wertheimer*, 99 N. Y. 149; *Societa Italiana* v. *Sulzer*, 138 N. Y. 468; *Radde* v. *Ruckgaber*, 3 Duer, 684; *Kellogg* v. *Baker*, 15 Abb. Pr. 286; *Lansingh* v. *Parker*, 9 How. Pr. 288; *Otis* v. *Ross*, 8 How. Pr. 193; *Buhler* v. *Wentworth*, 17 Barb. 649; *Hollenbeck* v. *Clow*, 9 How. Pr. 289; *Ormsby* v. *Douglas*, 5 Duer, 665.) There was error in the admission of evidence as to the reputation of Coney Island concert halls.   If the plaintiff made out a cause of action by merely proving publication of the article, and that the reputation of the Coney Island concert halls was bad, at least this latter fact should have been proved clearly and by competent evidence. (*Bakeman* v. *Rose*, 14 Wend. 105; *Link* v. *Sheldon*, 45 N. Y. S. R. 165; *Carpenter* v. *Blake*, 10 Hun, 358.)

*William G. Cooke* for respondent.   The article complained of was libelous *per se*. (*Moore* v. *Francis*, 121 N. Y. 205;

*Morey* v. *M. J. Assn.*, 123 N. Y. 207; *Moffatt* v. *Cauldwell*, 3 Hun, 26; *Shelby* v. *S. P. Assn.*, 38 Hun, 475; 3 Salk. 226; 109 N. Y. 611.) It was not necessary to allege or prove special damage. (*Stone* v. *Cooper*, 2 Den. 299.) There was ample proof of publication by the defendant. (*Durant* v. *Abendroth*, 15 N. Y. S. R. 339; *Hatcher* v. *Rocheleau*, 18 N. Y. 86; *People ex rel.* v. *Smith*, 45 N. Y. 779; *Lyon* v. *Adde*, 63 Barb. 89; *T. & R. R. R. Co.* v. *Kerr*, 17 Barb. 599; *Cook* v. *Barr*, 44 N. Y. 158; *Ferris* v. *Hard*, 135 N. Y. 354; *Dodge* v. *Alger*, 21 J. & S. 107; *Holmes* v. *Jones*, 121 N. Y. 466.)

BARTLETT, J. This is an action for libel. The defendant published in its newspaper, "The New York Recorder," in the city of New York, of and concerning the plaintiff, three days after her marriage, that she was a "dashing blonde, twenty years old, and is said to have been a concert-hall singer and dancer at Coney Island."

It also charged in substance that she had been secretly married to her husband, who was seventy-five years old, and "fond of pretty women."

It is admitted that the statements as to plaintiff and her alleged secret marriage are false.

The complaint alleges that "a 'concert hall at Coney Island' is a place of evil report and a resort for disorderly and disreputable persons of both sexes; that the female singers and dancers therein are generally depraved and abandoned women, or are so regarded and understood to be, and as such are shunned and avoided by orderly and respectable people."

Upon the trial evidence was given tending to show that the concert halls at Coney Island were drinking places, in which were tables where the customers sat, attended by rough and uncouth waiters; that there was a stage in one end of the room, on which persons performed and women appeared in short skirts to dance and sing, and that when they were not upon the stage performing they were often among the audience drinking with strange men. Other evidence was given which tended to prove in detail that the women who were connected

with such places have a distinctive reputation, which is bad in respect to their morality, and that these concert halls were resorts of a low order.

It is to be borne in mind that this charge was published in a newspaper circulated in New York and Brooklyn, and was necessarily read by a large number of people who were perfectly familiar with the nature of the concert hall, so called, not only in the two cities referred to, but also at the summer resort known as Coney Island. It is true that at the latter place concerts are given daily in the summer at Manhattan Beach and Brighton, which are attended by the general public, and at which appear singers and musicians of the highest reputation. The audiences that there assemble are as reputable as any that meet in the Metropolitan Opera House in New York during the winter season.

When the general public read of the plaintiff that she had been a concert hall singer and dancer at Coney Island, they did not for one moment associate her with the concerts at Manhattan Beach and Brighton, but rather with that class of cheap and disreputable entertainments which flourish at the western end of the island known as concert halls, the character of which has been fully disclosed in this record. To say that the words published of the plaintiff in the community where the character of the concert hall is well known were not calculated to hold her up to disgrace and disrepute and to charge her with unchaste conduct, is to reach a conclusion both illogical and unjust. Such a charge is libelous *per se*, and results in damages that cannot be measured by mere money compensation.

In order to appreciate the unfortunate effect of this publication upon the character and prospects of this plaintiff, it is proper to recall a few of the facts as proved at the trial. It appears that this plaintiff, a lady thirty-five years old, married a reputable citizen of Brooklyn, she being at the time a stranger in that city, but intending to make it her future home. It further appears that she was born in Indiana, but passed her youth in Palmyra, Wayne county, N. Y., on a farm; that she was graduated at the Palmyra Normal School and the Roches-

ter Training School, and since then had been engaged continuously as school teacher up to the time of her marriage; that she had never been on the stage in any capacity, never sung or danced at a concert hall or at any other place, and never had been in a concert hall even as a spectator.

To make this false and serious charge concerning a lady who had just taken up her residence among strangers and who undoubtedly hoped to win her way into good social position and to deserve the friendship and respect of virtuous women and honorable men, was to advertise her as no better than a woman of the pave. Such a charge, if believed, holds a woman up to the public gaze not only as unchaste, but as belonging to one of the lowest classes of the great army of fallen women.

It does not meet the present situation to say that it is not libelous *per se* to publish of a woman that she is or was upon the stage, and that she acted, danced or sung at a public entertainment or in a public place. It is very true that good and noble women have graced the stage at all times, but these observations are entirely without application to the case at bar. We have here the direct and explicit charge that the plaintiff " is said to have been a concert-hall singer and dancer at Coney Island," which can mean but one thing, as already pointed out.

This publication was libelous *per se* in two aspects; it was a charge involving unchastity, and it also tended to disgrace the plaintiff and hold her up to ridicule and contempt.

This court held in *Morey* v. *Morning Journal Association* (123 N. Y. 207) that to publish of the plaintiff that he was threatened with a breach of promise suit, and that his friends were moving to effect a reconciliation, but the young lady insisted on his marrying her, was libelous *per se*, calculated to disgrace him and hold him up to ridicule and contempt, and that it was not necessary to allege or prove special damages. (See cases cited in 123 N. Y. at page 210.)

We are of opinion that there was sufficient proof of publication by the defendant; also, that publication is admitted in the answer.

The judgment should be affirmed, with costs.

O'BRIEN, J. (dissenting). It appears that the plaintiff was married to Gen. Theodore B. Gates on June 28, 1893. She has recovered damages in this case as the result of a publication by the defendant alleged to be libelous. The complaint charges that on July 1, 1893, two days after her marriage, the defendant published in a newspaper called the "New York Recorder" a highly-colored and somewhat sensational announcement of the marriage, in which the plaintiff is referred to in the following words: "The General's bride is a dashing blonde, twenty years old, and is said to have been a concert-hall singer and dancer at Coney Island."

It is, I think, admitted that this reference to the lady was at least a mistake. There is no allegation in the complaint, or proof in the record, of any special damage sustained by the plaintiff in consequence of the publication, and hence the question is presented whether the words are actionable *per se.*

In all actions of this character the plaintiff's right to damages is either to be presumed from the nature of the words themselves, or made out by allegations and proof of their injurious consequences. A publication is libelous on its face when the words impute to the plaintiff the commission of a crime, or a contagious disorder tending to exclude him from society, or when the injurious words are spoken or published with respect to his profession or trade, or disparage him in a public office, or tend to bring him into ridicule and contempt.

But in all other cases, the fact that the plaintiff's reputation has been injured by the words must be proved at the trial by evidence of the consequences that directly resulted from their publication. This is called evidence of *special damage,* as distinguished from the *general* damage which the law presumes without express proof, where the words are actionable *per se.* (Odgers on Libel & Slander, p. 2.)

It is well settled that the plaintiff cannot introduce the issue of special damage at the trial unless he has laid the proper foundation in the pleading.

30

This court, in a recent case, adopted the classification of actionable words as defined by Chief Justice De Grey in the leading case of *Onslow* v. *Horne* (3 Wilson, 177). According to that classification actionable words are those which (1) import a charge of some punishable crime; (2) impute some offensive disease which would tend to deprive a person of society, or (3) which tend to injure a party in his trade and occupation or business, or (4) which have produced some special damage. (*Moore* v. *Francis*, 121 N. Y. 199.) The words complained of in this case do not fall within any of these classes, except the last, and if actionable only by reason of special damage, that was neither alleged nor proven.

Formerly words imputing unchastity to a female were not actionable *per se*, but only when special damages were alleged and shown as the direct result of the charge. (*Pollard* v. *Lyon*, 91 U. S. 225; *Bassell* v. *Elmore*, 48 N. Y. 561; *Terwilliger* v. *Wands*, 17 N. Y. 54; *Wilson* v. *Goit*, 17 id. 442; *Williams* v. *Hill*, 19 Wend. 305; Odgers on Lib. & Slan. p. 84.) But the rule was abrogated in this state by statute (Laws of 1871, ch. 219; Code, § 1906). And yet this court held, after the rule was abolished, that words infinitely more injurious to a female than those complained of in the case at bar were not actionable, without allegation and proof of special damage as the direct result of the words. (*Anon.*, 60 N. Y. 262.) Women are now engaged in most of the professions and occupations of life. They have long been prominent upon the stage, and have come to be regarded as an indispensable part of all public amusements and entertainments in which dancing and music is a feature. The question arises, is it libelous to publish of a woman that she is, or was, upon the stage, or that she danced or sung at a publ. entertainment or in a public place. That would be true of some of the most respectable women in the land. The words the complaint, in this case, describe the plaintiff as having been engaged in a well-known profession or occupation; that is to say, a concert-hall singer and dancer. There are thousands of women engaged in the same or in like occupations, and to speak of

them as so engaged is no more injurious in law than it would
be to describe a man so engaged by the same terms.  When
we consider how society is made up in these days, and the
numerous occupations in which women are engaged, it would
be impossible to hold that loose morality is necessarily imputed
to a female from the fact that she is, or was, a concert-hall
singer and dancer.   In all civilized countries it has become an
art or profession in which women earn a living without neces-
sarily being disgraced.   It is quite true that it sometimes hap-
pens that women, as well as men, attain a prominence in social
life, and succeed in the world beyond any anticipations that
they could have entertained in early life, and any reference to
their humble origin then becomes distasteful.   But these are
all personal peculiarities indicating weakness rather than
strength, and of which the law takes no notice.   It could be
written and published to-day of many good and devoted
women that they were once upon the stage, and yet I think
that no one would suppose that it imputed to them anything
in the slightest degree disgraceful.

The learned counsel for the plaintiff admits all this.   He
tells us in his brief that had his client been described as a
concert-hall singer and dancer simply, that then the words
would not be libelous, since, as he says, professional ladies of
unexceptionable character sing and dance at certain places,
which he names, in the presence of refined and virtuous people
surrounded by accessories in the highest degree respectable
and orderly.   The only sting which he finds in the published
words is the particular place where it is said the plaintiff was
so engaged, that is to say, at Coney Island.   His contention
really is, that to publish of the plaintiff that she was once a
concert-hall _. ;r and dancer at Coney Island is *per se*
libelous, while to publish that she had been a concert-hall
singer and ம   er generally, or at some other place or locality,
would not be.   ·

But how can the courts take judicial notice of the fact that
a concert-hall singer and dancer at Coney Island is one thing
and a concert-hall singer and dancer generally, or at some

other place, is quite another thing? The law determines the actionable character of words from their natural and necessary import. When a person is represented as engaged in a particular occupation or profession, the courts cannot say that the profession or occupation means one thing in one county of the state and something else in another county.

It cannot be contended that the words charged in the complaint in this case were actionable without allegation and proof of special damage prior to the enactment of the statute which permits a woman to maintain an action for words imputing unchastity without such allegation or proof, and, if so, how has that statute changed the law applicable to this case? It abrogated the common-law rule only as to words imputing unchastity. But no one claims that the publication in question imputed anything of the kind in any sense or in any degree. The most that is claimed is that the words, if believed, would affect the plaintiff's position in society and deprive her of the position that otherwise she might or would be entitled to occupy. All that might be true of a woman that had been a variety actress, or on the stage in some other capacity, but it would not necessarily impeach her personal honor. The law cannot take notice of the various and ever-changing codes and customs under which a person's proper position in the social world is established, or gained or lost. The functions of the courts are confined to two things: (1) Whether the words, when false, are actionable in themselves, and from their very nature, meaning and import. (2) If they are not, then whether the person with respect to whom they are used has in fact been injured by their publication, and this must be matter of allegation and proof, not to be presumed as in cases where the words themselves are defamatory.

Moreover, it is not claimed that all concert-hall singers and dancers at Coney Island during the season are involved in the special reputation which it is said attaches from contact with the place. If we can take judicial notice of anything concerning that particular locality, it would be that it contains, during the summer season, numerous places of amusement, of

various degrees of excellence, and, perhaps, of various shades of respectability, at which all classes of people are amused or entertained.    So much, I think, may fairly be gathered from what appears in judicial records.   (*People* v. *McKane*, 143 N. Y. 465, 469.)

But it would be impossible to say, from the words used by the defendant, that the profession or occupation imputed to the plaintiff means one thing at one particular place of amusement and something else at another place, or that it is respectable at one end of the island while not so at the other.

It is admitted that even at Coney Island there are places of amusement in the highest degree reputable, where women sing and dance to audiences composed of the best people. There the woman is simply an artist and no shade of dishonor attaches to her by reason of her profession or special vocation. But this only adds to the difficulty of the plaintiff's contention, since we cannot say, from the words themselves, whether the plaintiff is charged with having been a concert-hall singer and dancer at a low place or at a highly respectable place.    If they refer to the latter then clearly they are not actionable. We can only make them actionable by presuming as matter of law that they refer to some particular place where a reputation for unchastity attaches to the female in consequence of her presence amid such surroundings.    I am not aware of any such rule in the law of libel.    It would be simply holding that when words are capable of being understood in an innocent as well as in an injurious sense, according to the particular intention of the author, that the courts must always presume that they were used in the latter sense and not in the former.

The distinction to be noted in all actions for damages in consequence of injurious words was thus stated by Judge COOLEY in his recent work on Torts, with his usual clearness and simplicity : " Certain publications are said to be actionable *per se*.    By this is meant that an action will lie for making them without proof of actual injury, because their necessary or natural and proximate consequence would be to cause injury to the person of whom they are spoken, and, therefore, injury

is to be presumed. In the case of certain other publications no such presumption can be made, because observation does not justify a like conclusion. Therefore, in such cases, the publications are only actionable on averment and proof that injury which the law can notice actually followed as a natural and proximate consequence." In regard to the other class of injurious words, and they embrace, as I think, the publication complained of in this case, he says : " The fifth class of cases embraces all those in which the untruthful statement is not deemed in law to be necessarily of a damaging character, but which can be and is shown to have been damaging in the particular case by reason of special circumstances which are set out in the declaration. Thus, if one say of another, " He is a rogue," the law will not imply a resulting injury; but if it be shown that, in consequence of the imputation, he was discharged from an employment, or was refused employment, the special injury is thus made to appear. So, although to say of a female that she is unchaste, is generally held not actionable where unchastity is not made a punishable crime, yet if the woman can show that, because of the imputation, she lost a contemplated marriage, or suffered in any manner pecuniary loss, she is entitled to legal redress. * * * The injury must be pecuniary in its nature, but it is immaterial whether it be great or small, except as the amount of the recovery will depend upon it." (Cooley on Torts [2nd ed.] pp. 228 & 238.)

The record itself in this case is a confession that the words charged are not libelous *per se.* If they were it could not be necessary to allege that concert halls at Coney Island were disreputable places, and that the women who sing and dance in them are considered depraved.

If the words are actionable in themselves, then the proof given under defendant's objection and exception as to the character of Coney Island singers and dancers was clearly incompetent, and the judgment should be reversed for that reason. But the whole trial was an attempt to make words not actionable in themselves libelous by extraneous proof. It

needs no argument to show that words injurious and action-able in themselves cannot be enlarged by the opinions of wit-nesses or other proof of extraneous facts. Actionable words always carry with them their own injurious meaning and con-sequences. But in this case the complaint was wholly insuf-ficient to permit the plaintiff to go into proof that the words were injurious in fact, for the reason already stated, and that there was no innuendo or averment of any kind in the com-plaint that the defendant used the words in the injurious sense sought to be attached to them by the extraneous proof.

The rule of pleading in such cases is thus stated in Odgers on Libel and Slander (p. 99): "But where the words *prima facie* are not actionable, an innuendo is essential to the action. It is necessary to bring out the latent injurious meaning of the defendant's words, and such innuendo must distinctly aver that the words had a distinct actionable meaning."

There is no such allegation in the pleading, and if it was not necessary to give the words a special meaning by extra-neous proof, then, clearly, the proof objected to, showing what a Coney Island dancer and singer is, should have been excluded. The plaintiff cannot say that the words are actionable on their face, and at the same time give proof to show that they have some special meaning not conveyed by their mere use. This court has held in a recent case that to publish of a young unmarried woman "that she entertained gentlemen company at all hours of the night" were not actionable words in them-selves, and that it was necessary to allege that the defendant intended in using them to impute unchastity to the plaintiff, and since the complaint did not, by innuendo, aver that the words were used in that sense, it was bad. (*Hemmens* v. *Nel-son,* 138 N. Y. 517.) So it has often been held that to pub-lish of a person that he had sworn falsely, or had taken a false oath, was not actionable, and that a pleading that failed to aver that the defendant meant by the use of the words to charge the plaintiff with false swearing before a competent court or in a legal proceeding, with respect to a material fact, was bad. (*Vaughan* v. *Havens,* 8 Johns. 109; *Crookshank*

v. *Gray*, 20 Johns. 344 ; *Bullock* v. *Koon*, 9 Cowen, 30 ; *Ross* v. *Rouse*, 1 Wend. 475.)

The rule of pleading in such cases was very clearly stated by Chief Justice SHAW in the leading case of *Carter* v. *Andrews* (16 Pick. 6), as follows : Whenever words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact, this fact must be averred in a traversable form, which averment is called the *inducement*. There must then be a *colloquium* averring that the slanderous words were spoken of, or concerning that fact. Then the word "meaning," or innuendo, is used to connect the matters thus introduced by averments and *colloquia*, with the particular words laid, showing their identity, and drawing what is then the legal inference from the whole declaration, that such was, under the circumstances thus set out, the meaning of the words used. (1 Bouv. Law Dict. 292.) In this case there is no averment that the words have any meaning or were used in any sense other than what is to be derived from their own intrinsic force, and hence the proof as to the character of concert halls at Coney Island and their inmates is of no consequence.

I am also of opinion that it was not proven that the defendant corporation published the paper containing the alleged libel. The only proof claimed at the trial was an admission in a distinct and separate defense of the answer setting up mitigating circumstances. The plaintiff could not take part of a separate defense as an admission, certainly without taking it all, and as the defense referred to averred that the publication was in good faith and without malice, the adoption by the plaintiff of the whole statement would defeat the action, since without malice, express or implied, there could be no libel.

If the plaintiff has been injured by the publication she ought to have legal redress, but not otherwise. The procedure for that purpose in actions of slander and libel has long been settled, and should be observed by parties seeking to recover damages in such cases.

The words in this case, not being actionable in themselves, it was necessary for the plaintiff to allege and prove, either that they were intended and used in some particular or special sense injurious to her honor and reputation as a woman, or that in fact she sustained special damage as a consequence of the publication. As the pleadings and proofs now appear the case was not made out, and the judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

BARTLETT, J., reads for affirmance; HAIGHT, MARTIN and VANN, JJ., concur; O'BRIEN, J., reads for reversal, and PARKER, Ch. J., concurs; GRAY, J., absent.

Judgment affirmed, with costs.