her disposing of the Connecticut Company policy, and the application of its proceeds to the payment of Bauer's loan. There is no question of tender involved in this case. The pledgee sold the property notwithstanding the waiver, and there was no direct tender to him necessary. Stearns v. Marsh, 4 Denio, 227.

The only remaining question is as to the measure of damages. The appellants' contention is that the surrender value of the policy is all that could be recovered. Undoubtedly the general rule in actions of conversion is that the measure of damages is the value of the property at or about the time of the conversion, but it is necessary to take into consideration the peculiar character of this pledge, and what was done with it. As was said in Whitehead v. Insurance Co., 102 N. Y. 143, 6 N. E. 267, if we should limit the recovery to the surrender value, it would simply be adding the sanction of the court to the unauthorized surrender, and make it valid. Here was a contract of insurance upon the life of a man then suffering from an incurable disease, and who died within six months after that contract was destroyed by the wrongful act of Charles Bauer's agent. It was impossible to reinstate that contract. The insurance company was not bound to reinstate it, and the necessary consequence of the surrender was the loss of the whole amount of the insurance over and above the debt due to Bauer. It may be said that ordinarily the measure of damages would be whatever would make good the loss to the assured occasioned by the surrender, but it is obvious in this case that no other insurance could be obtained in a responsible company upon the life of a dying man; and there is no measure of damages that can be resorted to, except that which was applied on the trial.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

(35 App. Div. 236.)

GRAY v. BROOKLYN UNION PUB. CO.

(Supreme Court, Appellate Division, Second Department. December 6, 1898.)

1. TRIAL—EVIDENCE—OBJECTIONS.
    Where an objection to the admission of evidence states fully the ground of objection, subsequent objections to the same class of evidence are sufficient, although merely general in character.
2. LIBEL—EVIDENCE—MITIGATION—PRIOR PUBLICATION.
    Evidence that the alleged libelous article had been previously published in other papers is inadmissible in mitigation of damages, when it is not claimed that defendant was influenced by such publication.
3. SAME—PLEADING.
    Evidence of prior publication of the alleged libelous article by other papers, to be admissible in mitigation of damages, must be pleaded.
    Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by Mary Jennings Gray against the Brooklyn Union Publishing Company for libel. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Wm. McM. Speer, for appellant.
Jesse W. Johnson, for respondent.

HATCH, J. At the trial defendant sought, upon cross-examination, and also by affirmative proof, to show that an article similar to the one which formed the basis of this action was published in other papers prior to the publication by the defendant. The question first arose upon the cross examination of one of the witnesses for the plaintiff, who was asked, "Did you see this article, or a similar article in reference to the plaintiff, in any other papers before it was published in the Standard Union?" This was objected to upon the ground that it was "immaterial, incompetent, irrelevant, and outside of the pleadings." The court said, "I think it is competent on the question of malice." The plaintiff excepted to the ruling, and the witness stated, "I am unable to say." Thereupon the court observed, "It is no defense to an action, but it goes to the question of whether a person did a thing maliciously. In Root v. King, 7 Cow. 613, the leading case in this state, that held that even rumor could be pleaded in justification of malice." Nothing further was elicited from this witness. When the plaintiff was called to the stand, counsel, upon cross-examination, asked, "You have named the different papers where this was published, —a similar article. Among others, it was published in the Herald, too, was it not?" The assumption in the question as to the naming of the papers was wholly gratuitous, as the witness had named none, nor had any been referred to by name, aside from the Standard Union. The question, however, was objected to, no answer was given, and the court observed, "I will allow you to prove by your editors and publishers the fact." Plaintiff excepted. After another answer, the court asked, "Was it published in the Herald?" and the witness answered, "I couldn't say; the Journal, and Citizen, and World, and several papers." Counsel for defendant then asked, "And the Eagle?" and the witness answered, "Yes, sir." The defendant called the city editor of the Standard Union as a witness, and asked of him, "What paper did you see it in?" The plaintiff objected, and the court asked, "Before you published?" and the witness replied, "Yes, sir." The court then ruled that the evidence was competent on the question of malice, and the plaintiff excepted to such ruling. The witness thereupon testified that he verified the article in other papers; that he thought, from the Morning World; that the printed slip contained the facts, and he had it rewritten and printed it. It is therefore apparent that the attempt upon the part of the defendant was to prove the publication of this article in other newspapers, and the ruling of the court permitted the testimony, as bearing upon the question of malice, and therefore going in mitigation of damages. When the question first came up, the plaintiff properly objected, stating fully the grounds of her objection. The court was therefore fully apprised of the point of objection, and

ruled with a full understanding of the question sought to be raised. The objections, after the first, were general in character, but the point was fairly taken when the question first arose. As no one was misled, the question was properly raised, and the exception thereto is available. Montignani v. E. V. Crandall Co. (Sup.; not yet officially reported) 54 N. Y. Supp. 517. I am of opinion that this ruling constitutes reversible error. There was no pretense that the defendant had seen the article in the newspapers mentioned in the answer to the question by the court, except the World, or in the Eagle, which the question of the counsel for the defendant produced. It is not now claimed that the defendant was influenced in what it did by anything appearing in these papers, and it is not now suggested that any ground exists which justifies this evidence, under the most liberal construction. This evidence, therefore, was not competent for any purpose. Evidence in mitigation must consist of those circumstances which, while not arising to the dignity of a justification of the charge as truthful, yet do in an appreciable degree tend towards that end, and thus permit of an inference that the defendant was not actuated by malice in publishing the libel. "They must be of such a nature as to show that defendant, though mistaken, believed the charge to be true when it was made." Mattice v. Wilcox, 147 N. Y. 624, 42 N. E. 270. There is not a scintilla of proof that the defendant believed the charge to be true after reading the article. Its editor does not state that he believed to be true what he read in the newspaper from which the article was taken. The bare fact is that other newspapers published the libel. Beyond this the proof does not go. Even though enough had appeared to legally constitute mitigating circumstances, and we so construe this evidence as such, still matter in mitigation must be pleaded, in order to be available as evidence. Bush v. Prosser, 11 N. Y. 347; Willover v. Hill, 72 N. Y. 36; Hatfield v. Lasher, 81 N. Y. 246. And such pleading must relate to the charge in the publication, construed in the sense understood by people generally, giving to such words their ordinary meaning. Brush v. Blot, 16 App. Div. 80, 44 N. Y. Supp. 1073. Tested by this rule, it is clear that this evidence was not pleaded in mitigation. This objection was taken when the subject-matter first came up, and the court ruled in respect thereto. In no view, therefore, can the ruling of the court be upheld.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., dissenting.

GOODRICH, P. J. (dissenting). I am constrained to differ from my associates, and for these reasons:

The article in the defendant's newspaper read as follows:

### "Woman Sold Her Husband.

#### "Now Mrs. Robinson Regrets Her Bargain, It is Said.

"A short, stout woman, who said her name was Hannah Robinson, of 621 West Twenty-Fifth street, New York City, appeared before Magistrate Wentworth yesterday, and, with a Scottish accent, said that she had sold her husband, John, to another woman, named Jennie Gray, of the same address, for

$25. She said that she regretted her bargain, and wanted her husband back. The magistrate told her that the best thing she could do would be to secure a divorce. Mrs. Gray is a widow, and a dealer in oil cloths, which she sells to peddlers. Robinson and Mrs. Gray became infatuated with each other, and the widow induced Mrs. Robinson to part with her husband for a consideration of $25."

The jury rendered a verdict for six cents damages, and from the judgment entered thereon, and an order denying a motion for a new trial, the plaintiff appeals.

It will be observed that the plaintiff's name is Mary Jennings Gray, while the article speaks only of Mrs. Gray. It appeared, also, that the article states the address of the plaintiff as 621 West Twenty-Fifth street, New York City, while the plaintiff resided in Brooklyn. There would be difficulty in connecting the plaintiff with the article, except for the further statement that she "is a widow, and a dealer in oil cloths, which she sells to peddlers." The verdict, however, is conclusive that the plaintiff was the person referred to in the article. The article is a libel per se. It falls within the category of section 242 of the Penal Code, which enumerates, among other things, anything "which exposes any living person * * * to hatred, contempt, ridicule or obloquy, or which causes, or tends to cause any person to be shunned or avoided." There are numerous authorities, of which we need only to cite Gates v. Recorder Co., 155 N. Y. 228, 233, 49 N. E. 769, where O'Brien, J., in his dissenting opinion (not opposed on this point by anything in the prevailing opinion), said that a publication is libelous on its face when the words impute to the plaintiff such conduct as tends to bring him into ridicule and contempt. It is also elementary doctrine that the law imputes malice where an unprivileged libel per se is published, and presumes damages to the plaintiff. Sanderson v. Caldwell, 45 N. Y. 398.

I come then to the question whether the verdict should have been set aside because it awarded insufficient damages. This subject was peculiarly within the province of the jury. No special damages were alleged or proved. It is not profitable to speculate as to the reasons of the jury for the amount of their verdict,—whether they awarded nominal damages because they believed that the article had worked no injury to the plaintiff. With all this the court has no concern, unless some injustice has been done; and I cannot affirm that injustice has been done. There are numerous cases where the courts have refused to set aside verdicts for nominal damages. I think the rule is well stated in Wavle v. Wavle, 9 Hun, 125, 126, where the court reversed an order setting aside a verdict for six cents. The court said:

"The amount of damages to which plaintiff was entitled was not fixed. definite, or certain, nor was it capable of being made so by any process of computation. The damages were wholly in the discretion of the jury, and not controlled as to amount by any evidence given upon the trial. The appearance, character, and conduct of the parties and witnesses, the probabilities surrounding the transaction, the nature of the slander and the injury done. all constituted elements to be considered by the jury. This has been done. with the result seen. Whether such verdict is the result of a compromise of differences among jurors, or whether it expresses the judgment of each juror,

we cannot tell.   Such results in such cases are within the experience of every judge.   Ordinarily such verdicts are deemed expressions of the jury that each party is more or less in fault, and that neither shall profit thereby.   In cases like slander, libel, and malicious prosecution, it is well to have an end of litigation as early as possible.   Such actions generally involve more of passion than of principle or actual damage.   So, when such a case has been once fairly tried and considered by a jury, its decision ought generally to be conclusive and final.   Further litigation will but aggravate resentments, increase the costs and expenses, and still more tarnish the reputation of all concerned."

It is true that this was an action for slander, and the defense was justification, but the reasoning is none the less applicable to the case at bar.

In Griebel v. Printing Co., 24 App. Div. 288, 48 N. Y. Supp. 505, Mr. Justice Follett, delivering the opinion of the court, said (page 290, 24 App. Div., and page 506, 48 N. Y. Supp.):

"Subject to the right of the court to set aside the verdict for excessive or insufficient damages, the question of how much money would compensate the plaintiff for the injuries sustained was solely a question for the jury."

Mr. Townshend, in his treatise on Slander and Libel (section 293), states the rule as follows:

"As the amount of damages in an action for slander or libel is always a subject for the exercise of the sound discretion of the jury, who may give more or less according to their conclusions from the whole case respecting the motives of the publisher, a verdict in such an action will not be set aside for excessive damages, unless there is some suspicion of unfair dealing, or 'unless the case be such as to furnish evidence of prejudice, partiality, or corruption on the part of the jury.'   The case must be very gross, and the damages enormous, to justify ordering a new trial on a question of damages."

I see no reason why the rule which governs a verdict claimed to be excessive ought not to be applied to a verdict claimed to be insufficient.

It appears by the record that the motion for a new trial was taken under advisement by the learned justice who presided at the trial, and that he denied the motion at a later date.   I am constrained to give effect to his opinion, where he said:

"It was a close question of fact whether the publication applied to the plaintiff at all; i. e. whether any one, on reading it, would understand that it was of and concerning her.   The jury found for the plaintiff on this head, but must at the same time have found that very few could have so understood it, and that, therefore, the plaintiff's damage was only nominal.   Motion denied."

It does not appear by the record that the verdict was based upon passion, prejudice, or partiality, and I think the judgment and order should be affirmed.