GREYHOUND SECURITIES, INC., Appellant, *v.* GREYHOUND CORPORATION, Respondent.

First Department, November 17, 1960.

*Robert E. Delaney* of counsel (*Theodore L. White,* attorney). for appellant.

*Harold J. Drescher* for respondent.

Botein, P. J.  Plaintiff, Greyhound Securities Inc., is a corporation engaged in the business of securities dealer and underwriter.  Defendant, the Greyhound Corporation, is engaged primarily in the operation of buses, with some related activities unconnected with the business of dealing in securities.

The complaint recites three causes of action to recover for libel, based respectively upon three letters annexed to the complaint, and written and sent by defendant to the Securities and Exchange Commission, the National Association of Securities Dealers, and to the plaintiff itself.  We are concerned mainly with the first two causes of action, bottomed upon letters with almost identical subject matter.  In both letters defendant expresses the apprehension that because of the similarity in names the public may be deceived into believing " that the dealer is in some way affiliated or connected with us ".

Further on in each letter, and this is the language heavily stressed by plaintiff as defamatory, defendant expresses the belief " that the use of the name ' Greyhound ' by the company [plaintiff] is deceptive per se."  In one letter defendant asks if there is any procedure by which the Securities and Exchange Commission could reconsider its prior approval of plaintiff's broker-dealer registration application.  In the other it solicits the aid of the association in curing the situation.  Plaintiff alleges that defendant wrote and published these letters maliciously.  It does not appear that prior to writing to the two regulatory agencies defendant had made any effort to communicate with plaintiff to seek a voluntary correction.

The parties are agreed that since plaintiff does not plead special damages the question presented upon this appeal is whether the alleged defamatory words are libelous per se.  If so, then of course the allegations of general damages are sufficient (*First Nat. Bank* v. *Winters,* 225 N. Y. 47; *Sydney* v. *MacFadden Newspaper Pub. Corp.,* 242 N. Y. 208, 211; *Frawley Chem. Corp.* v. *Larson Co.,* 274 App. Div. 643, 644).  A corporation may maintain an action for libel without alleging special damages if, as contended by plaintiff, the publication disparages some aspect of its business in such a manner as directly to prejudice the successful conduct or to imperil the very continuation of that business (*First Nat. Bank* v. *Winters, supra; Hornell Broadcasting Corp.* v. *Nielson Co.,* 8 A D 2d 60; *Berkson* v. *Time, Inc.,* 8 A D 2d 352, affd. 7 N Y 2d 1007; Restatement, Torts, § 561, subd. [1]).

On this motion attacking the complaint for insufficiency we must accept the ultimate facts which are pleaded as though admitted by defendant. Our scrutiny is limited to a determination of whether the wording of the letters is reasonably capable of a defamatory meaning (*Corr* v. *Sun Print. & Pub. Assn.,* 177 N. Y. 131, 135; *Katapodis* v. *Brooklyn Spectator,* 287 N. Y. 17, 19). If so, the plaintiff has the right to have a jury decide whether the allegedly false words did in fact defame it to its damage (*Katapodis* v. *Brooklyn Spectator, supra,* p. 21; *Peck* v. *Tribune Co.,* 214 U. S. 185; *Balabanoff* v. *Hearst Cons. Pubs.,* 294 N. Y. 351, 356).

As the Court of Appeals has been careful to note, " [i]t is for the court, however, to decide whether a publication is capable of the meaning ascribed to it " (*Tracy* v. *Newsday, Inc.,* 5 N Y 2d 134, 136). See, also, *Julian* v. *American Business Consultants* (2 N Y 2d 1, 14). It may not strain to hatch an issue when none really exists (*Crane* v. *New York World Telegram Corp.,* 308 N. Y. 470, 479–480); on the other hand, the court may not ignore an issue and deprive a plaintiff of the right to trial by jury (*Moore* v. *Francis,* 121 N. Y. 199; *Mencher* v. *Chesley,* 297 N. Y. 94).

Therefore, speaking generally, a court may not dismiss a complaint alleging libel unless as a matter of law it must hold that the publication complained of cannot reasonably be found to contain defamatory matter or be reasonably susceptible of any defamatory meaning (*Neaton* v. *Lewis Apparel Stores,* 267 App. Div. 728, 732; *Hoeppner* v. *Dunkirk Print. Co.,* 254 N. Y. 95, 105).

Addressing ourselves to the first two letters annexed to the complaint, we find that both voice a belief that the similarity of the parties' names might deceive the public and that plaintiff's use of the name is " deceptive per se ". The dictionary definitions of the words " deceive " and " deceptive " are not dispositive, ranging as they do from the comparatively mild " impose upon " to the clearly derogatory " cheat " or " defraud " (Webster's New International Dictionary, 2d ed.). But in determining the capacity of these offending words to injure plaintiff, we must go beyond the dictionary definitions; and, no matter how defamatory some of the synonyms may seem when isolated, we must appraise their effect and impact in the fair context of the letters in their entirety (*Berkson* v. *Time, Inc.,* 8 A D 2d 352, *supra*).

Moreover, the climate of publication and the character and relationship of the audience to plaintiff must be taken into consideration, as well as the effect that the language complained of could have upon such an audience (*Neaton* v. *Lewis Apparel*

*Stores, supra*). The capacity for harm may very well depend upon the identity of the persons to whom the publication was directed. A statement that a lawyer is an aggressive, successful solicitor of legal business might elicit nothing but admiration from an association of salesmen and an entirely contrary reaction from a Bar association. Some hint of this additional dimension was given in *Gates* v. *New York Recorder Co.* (155 N. Y. 228), in which it was held defamatory to publish falsely of plaintiff that she was " a concert-hall singer and dancer at Coney Island ". Pointing out that the defendant newspaper was circulated in New York and Brooklyn, the court took the worldly view that it would necessarily be read " by a large number of people who were perfectly familiar with the nature of the concert hall * * * at * * * Coney Island " (p. 231). (See, also, *Peck* v. *Tribune Co.*, 214 U. S. 185, *supra*.)

The letters supporting the first and second causes of action were written to the Securities and Exchange Commission and the National Association of Securities Dealers. These are the recognized regulatory bodies controlling the securities business, with broad disciplinary powers to police and punish any deception by brokers and dealers, such as plaintiff, over whom they have jurisdiction.

More specifically, it seems to me that in writing to organizations possessing the power to destroy the party who is the subject of the communication — in fact, writing to them only because they possess such power — defendant should be held to especially strict accountability for the language it used. And the question as to whether such language carried defamatory meaning to its readers is for the jury to determine. Imposing a responsibility scaled to the libel's potential for mischief is not revolutionary in the law of defamation. The very difference in legal treatment of libel and slander is based upon the fact that ordinarily the written word has greater capacity for damage than the spoken one. " Many things that are defamatory may be said with impunity through the medium of speech * * *. What gives the sting to the writing is its permanence of form " (*Ostrowe* v. *Lee*, 256 N. Y. 36, 39). And a statement with derogatory implications made about persons in one calling may be fraught with graver consequences than the same statement about persons in a different field of endeavor (*Moore* v. *Francis*, 121 N. Y. 199, *supra*). See, also, the illustrations in section 559 of the Restatement of the Law of Torts.

It is true defendant disavowed any knowledge of the operation of plaintiff, and any suggestion or inference " that Greyhound Securities, Inc., is making or has made any repre-

sentations of affiliation or other connection with us." Upon the authorities discussed above, however, we believe it more appropriate that the jury determine whether there was other language in the letters that drained the offending words of any defamatory virulence. We cannot on a motion of this character accept defendant's argument that the meaning of the writer and the fair meaning of the letters was that plaintiff may have adopted its name "innocently". This word does not appear in the letters; and just as the meaning of words may not be changed by innuendo to make them libelous (*Tracy* v. *Newsday, Inc.*, 5 N Y 2d 134, 136, *supra*), so, too, we may not mould words to make them unexceptionable.

We appreciate that there would have been no point in complaining to the appropriate agencies about the similarity in names unless at the least the writer pointed out that there was a likelihood the public would be confused. If it felt aggrieved defendant had every right to communicate with the two organizations that could afford it relief, and to point out the public prejudice that would flow from continued use of the word "Greyhound" in plaintiff's name. The laws of defamation cannot and should not be invoked to paralyze the willingness of companies to protect their own interests and those of the public, through fully documenting and bringing improper practices to the attention of regulatory agencies.

On this motion addressed to the sufficiency of the complaint, we merely hold that we cannot say as matter of law that these letters are not defamatory — letters that were allegedly written and published with malice, which comprehends the desire to injure. Whatever the difficulties which may confront plaintiff in sustaining its burden of proof by a preponderance of the credible evidence upon the trial, at this juncture we cannot dismiss the first two causes of action on their face.

Because of the different context, the foregoing principles yield a different result with respect to the third cause of action. The third letter was addressed to plaintiff, was quite different in tone and content, and contained no assertion that the use of the name was deceptive per se. The publication to defendant's stenographer (*Ostrowe* v. *Lee*, 256 N. Y. 36, *supra*) could not have had such effect on the reader as would tend to prejudice plaintiff "in the conduct of its trade or business or to deter third persons from dealing with it" (Restatement, Torts, § 561, subd. [1]). We hold that as a matter of law the third cause of action does not allege a libel per se and is therefore insufficient because no special damages are pleaded.

The order appealed from should be modified, on the law, to the extent of reinstating the first and second causes of action and otherwise affirmed, with costs to appellant.

EAGER and BASTOW, JJ., concur; MCNALLY and STEVENS, JJ., dissent and vote to affirm.

Order, entered on December 28, 1959, granting defendant's motion, pursuant to rule 106 of the Rules of Civil Practice, to dismiss the complaint, modified, on the law, to the extent of denying defendant's motion to dismiss the first and second causes of action and, as so modified, the order is affirmed, with $20 costs and disbursements to the appellant.