JAMES BRUNSON, APPELLANT, V. RANKS ARMY STORE, APPELLEE.

73 N. W. 2d 803

Filed December 23, 1955. No. 33809.

*Victoria & Sloma,* for appellant.

*Levin & Brodkey,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought by James Brunson as plaintiff against Ranks Army Store as defendant in the district court for Douglas County to recover damages. The first cause of action is for breach of contract entered into by and between the plaintiff and defendant. The second cause of action is based on a violation of an alleged right of privacy. The defendant demurred separately to each cause of action on the ground that the facts set forth in plaintiff's amended petition on each cause of action failed to state facts sufficient to constitute a cause of action. The trial court sustained the defendant's demurrers. The plaintiff having elected to stand on his petition and not plead further, the trial court dismissed the cause at plaintiff's costs. Plaintiff perfected appeal to this court.

To determine whether or not the plaintiff's amended petition states a cause of action in the first and second

counts thereof, it becomes necessary to set forth in substance certain parts of the amended petition.

The plaintiff's amended petition alleged that the plaintiff is a resident of Omaha, Douglas County, Nebraska, and the defendant is a company engaged in the sale of goods of every kind and nature with its place of business in Omaha; that the plaintiff is an actor, specializing in portrayals and characterizations; that on or about February 1, 1950, the defendant, by oral contract, hired the plaintiff to portray and to head and lead seven of defendant's employees in portraying the notorious payroll robbers of Brinks, a money-delivery firm of Boston, Massachusetts; that the plaintiff, knowing and realizing the realism of his portrayal and characterization, accepted the employment under the express promise of the defendant that defendant would secure the permission of the Omaha police department for the portrayal of said robbers of Brinks; that the said portrayal was to be an advertising scheme and stunt for and in behalf of the defendant and for defendant's benefit; that on or about February 4, 1950, in the morning, just before the plaintiff and said defendant's employees left for the downtown section of Omaha in their disguises as the robbers of Brinks, upon inquiry by the plaintiff he was told by the defendant that the Omaha police department's permission for the said portrayal had been obtained by the defendant; that as a matter of fact, however, defendant failed and neglected to obtain and secure the permission of the Omaha police department; that as a direct result of this breach of contract by the defendant the plaintiff and his seven companions were arrested, detained, incarcerated for about an hour and a half, and then released on bond by the Omaha police department; that the Omaha World Herald, a daily newspaper with a very large circulation, carried in prominent places and in large headings the news of the arrest, incarceration, and the police appearance of the plaintiff and his seven companions, in fact through the

able handling of the news by the newspaper these news items became of national importance and interest and were carried by a great many newspapers throughout the country; that this arrest and incarceration of the plaintiff and the publicity received have made the plaintiff the object of shame, severe, cruel, and most annoying, and disturbing criticism, abuse, and ridicule; that the knowledge of the plaintiff's arrest and incarceration by his many friends, his wide acquaintance, and by strangers as well, has brought disrepute to the plaintiff by marring his good name and by destroying his long-enjoyed good standing and good reputation in the community; that since the arrest and incarceration of the plaintiff and the publishing of the same in the World Herald and the shame, abuse, and ridicule, the loss of plaintiff's good standing and good reputation in the community, the plaintiff has suffered and will continue to suffer great and severe mental pain and anguish, shame, humiliation, and disrepute; that the loss of plaintiff's good reputation and standing has made it undesirable for reputable business firms and reputable businessmen to employ the plaintiff for their legitimate advertising; that the plaintiff was not employed for about 8 months immediately following the arrest, incarceration, and publication of the same; and that by the subsequent shame, abuse, ridicule, humiliation, pain, and mental anguish, and the loss of good standing, good reputation, and employment, the plaintiff has suffered damages,

In the second cause of action the plaintiff incorporates the allegations contained in paragraphs I, which designates the parties, and II of the first cause of action. Paragraph II relates that the plaintiff is an actor specializing in portrayals and characterization. The petition then alleges in substance that the defendant, willfully disregarding the plaintiff's rights and without the permission and consent of the plaintiff, ran an ad in the Omaha World Herald, a newspaper of large circula-

tion, on the morning of February 7, 1950, as follows: "Jim Brunson, professional stunt man of 38 years, put on such a sensational stunt that the whole crew were thrown in the clink"; that on the afternoon of the same day in said paper, the defendant ran another ad as follows: "Ranks Gang Captured. The public can sigh in relief now because the Ranks gang led by Omaha's leading desperado, Jim Brunson, was captured Saturday"; that the plaintiff has never in any manner waived the protection of his right of privacy or consented in any manner to such invasion of his private life by the defendant as aforesaid; and that as a direct and proximate result of the wrongful and willful acts of the defendant and the attendant reading by many of plaintiff's friends, acquaintances, relatives, and strangers, the plaintiff has been subjected to and has become the subject of severe, constant, and cruel ridicule and abuse, has been greatly embarrassed from the date of the publication of the afore-mentioned articles to the present time, and as a result plaintiff has suffered and will continue to suffer severe mental pain and anguish, shame, and humiliation, and his reputation and prestige has been diminished and lowered, and by reason of all the above, the plaintiff has been damaged. Then appears a general prayer for damages on both causes of action.

The plaintiff assigns as error that the trial court erred in sustaining the defendant's demurrer to the plaintiff's amended petition and in dismissing plaintiff's action.

The plaintiff cites Alexander v. Thacker, 30 Neb. 614, 46 N. W. 825, as follows: Where a petition contains more than one count and a general demurrer is directed against the entire pleading, and is not limited to a particular cause of action, if either count is sufficient the demurrer must be overruled.

In the instant case the defendant filed a separate demurrer to each cause of action and not a general demurrer against the entire pleading. Obviously the rule stated above is not applicable.

In considering the effect of a general demurrer, in the instant case to each cause of action as filed by the defendant, the following rule is applicable: A general demurrer admits all the allegations of fact in the pleading to which it is addressed, which are issuable, relevant, and material, and which are well pleaded; but does not admit the conclusion of the pleader, except when they are supported by, and necessarily result from, the facts stated in the pleading. It does not admit inferences of the pleader from the facts alleged, nor mere expression of opinion, nor theories of the pleader, as to the effect of the facts, nor allegations of what will happen in the future, nor arguments, nor allegations contrary to the facts of which judicial notice is taken, or which are contrary to law. See, Richter v. City of Lincoln, 136 Neb. 289, 285 N. W. 593; 6 Standard Ency. of Procedure, pp. 943-952; Salsbury v. City of Lincoln, 117 Neb. 465, 220 N. W. 827; Markey v. School District No. 18, 58 Neb. 479, 78 N. W. 932.

We will consider the plaintiff's second cause of action first because it bears relation to the first cause of action and ties in with it.

It will be observed that the plaintiff's second cause of action is based on the doctrine of the right of privacy which is defined in 77 C. J. S., Right of Privacy, § 1, p. 396, as follows: "The 'right of privacy,' as the term is employed with respect to the determination of whether a cause of action in damages exists for an unwarranted invasion of such right or whether it may be protected by injunctive relief, may be defined as the right of an individual * * * to be free from unwarranted publicity, or to live without unwarranted inteference (interference) by the public about matters with which the public is not necessarily concerned, or to be protected from any wrongful intrusion into an individual's private life which would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."

Section 49-101, R. R. S. 1943, provides: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the Legislature of this state, is adopted and declared to be law within the State of Nebraska."

The doctrine of the right of privacy was not recognized or enforced in the ancient English common law. See, Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 89 Am. S. R. 828, 59 L. R. A. 478; Judevine v. Benzies-Montanye Fuel & Warehouse Co., 222 Wis. 512, 269 N. W. 295, 106 A. L. R. 1443; Milner v. Red River Valley Pub. Co. (Tex. Civ. App.), 249 S. W. 2d 227; Wilson v. Brown, 189 Misc. 79, 73 N. Y. S. 2d 587. There are numerous cases to the same effect.

Our research develops no Nebraska case holding that this court has in any form or manner adopted the doctrine of the right of privacy, and there is no precedent in this state establishing the doctrine. Nor has the Legislature of this state conferred such a right of action by statute. We submit that if such a right is deemed necessary or desirable, such right should be provided for by action of our Legislature and not by judicial legislation on the part of our courts. This is especially true in view of the nature of the right under discussion, under which right not even the truth of the allegations is a defense. We therefore hold that the action of the trial court in sustaining the defendant's demurrer to plaintiff's action based on the right of privacy was correct and needs no further comment.

With reference to the plaintiff's first cause of action based on the breach of contract by the defendant wherein the plaintiff states that as a result of said breach of contract he suffered damages largely in the form of mental suffering, anguish, and embarrassment, it is apparent that in this cause of action on the alleged breach of contract the plaintiff again makes reference to the

doctrine of the right of privacy of the plaintiff as heretofore set out.

The amended petition alleges that the plaintiff is an actor specializing in portrayals and characterizations; that he was hired to portray the notorious Brink payroll robbers; and that said portrayal of the said robbers was to be an advertising scheme and stunt. Not only was the plaintiff actually engaged as an actor and portrayer of characters, as such he was also in such capacity acting as the leading figure which was sufficiently realistic to result in his arrest and subsequent brief incarceration. Generally, actors and actresses seek publicity and often adopt various and sundry ways of securing such notoriety as will attract attention to them. This is considered their stock in trade.

Damages for mental anguish are not, as a general rule, recoverable in actions for breach of contract unless the breach amounts in substance to willful or independent tort. According to the weight of authority, mental anguish is not considered as an element of recovery in an action on an ordinary contract. See 15 Am. Jur., Damages, § 182, p. 599.

The reason why such damages are not generally recoverable is that they are too remote and could not have been in the contemplation of the parties when the contract was made. See Annotation, 23 A. L. R. 372.

To authorize a recovery in any case the damage must have been within the contemplation of the parties, and the defendant must have had notice when the contract was made that mental anguish might result from a default or negligence in his performance. See 15 Am. Jur., Damages, § 182, p. 602.

Where a recovery of damages for mental suffering is denied, it is usually denied upon the ground that the breach of the contract is not such as will naturally cause mental anguish. See Westesen v. Olathe State Bank, 78 Colo. 217, 240 P. 689, 44 A. L. R. 1484.

It is obvious that the plaintiff failed to plead in his

amended petition a cause of action that could in any manner be considered as one for the recovery of damages for mental anguish.

We conclude that the trial court correctly sustained the separate demurrers of the defendant to the first and second causes of action pleaded in the plaintiff's amended petition, and the judgment of the trial court should be and is hereby affirmed.

AFFIRMED.