**Geraldine J. GRAVINA, Plaintiff,**

v.

**BRUNSWICK CORPORATION,
Defendant.**

**Civ. A. No. 4537.**

United States District Court,
D. Rhode Island.

Feb. 11, 1972.

1

**2**

Abraham Goldstein, Providence, R. I., for plaintiff.

George M. Vetter, Jr., Michael P. DeFanti, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

Plaintiff Geraldine Gravina brought this action seeking recovery of damages from defendant Brunswick Corporation for its allegedly unauthorized use of her name and photograph in its advertising. The complaint alleged that on October 9, 1969, plaintiff achieved a new "world record" score of 253 pins in duckpin bowling, and that subsequently defendant circulated among "all proprietors of bowling alleys in the United States" a flyer containing plaintiff's photograph and indicating that plaintiff was a satisfied user of bowling pins manufactured by defendant. Plaintiff claimed embarrassment and humiliation as a result of defendant's advertising, and requested compensatory and punitive damages for defendant's unwarranted invasion of her privacy.

Defendant filed a motion to dismiss, relying on the case of Henry v. Cherry & Webb, 30 R.I. 13, 73 A. 97 (1909), which held that no common law right of recovery for invasion of privacy exists in Rhode Island.

In its memorandum in support of its motion to dismiss, defendant argues that despite the multistate factual aspects of this case the court is obligated to apply Rhode Island substantive law, and that in so applying Rhode Island law it must follow the holding of the *Henry* case. Plaintiff, in her memorandum of objection and her reply to defendant's memorandum, contends that the court is bound to apply the substantive law of Delaware, the state of incorporation of defendant, or Illinois, the state allegedly housing the main office of defendant.[1] Plaintiff further contends that even if Rhode Island substantive law is applied, the *Henry* decision should be recognized as obsolete and disregarded.

■ Before addressing itself to the choice of law issue, the court will determine whether the right of privacy is actionable at common law in Rhode Island.[2] It is well settled that a federal court sitting in a diversity action is bound to apply the applicable state law as the state court has declared it. Kerrigan's Estate v. Joseph E. Seagram & Sons, 199 F.2d 694 (3 Cir. 1953); Christian v. Preferred Acc. Ins. Co., 89 F.Supp. 888 (D.C.1950); Mangol v. Metropolitan Life Ins. Co., 103 F.2d 14 (7 Cir. 1939); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court in a diversity action must accept the ruling of a state court, even if in its opinion it is an erroneous ruling. Montgomery Ward & Co. v. Morris, 273 F.2d 452 (6 Cir. 1960).

Henry v. Cherry & Webb, *supra*, is the only Rhode Island case dealing with the right of privacy; no other case before or since 1909, the year *Henry* was decided, has concerned itself with the subject. The holding of *Henry*, "that a person has no right of privacy for the invasion of which an action for damages

---

1. Plaintiff did not allege in her complaint that Illinois is the state in which the main office of the defendant is located. However, the court, recognizing that plaintiff's complaint could be amended under Rule 15, F.R.Civ.P., to conform with the facts proved at trial, will accept plaintiff's assertions regarding the de-

fendant's contacts with the state of Illinois, subject to the later proof of those assertions.

2. The court takes notice of the fact there is no provision of the General Laws of Rhode Island which would authorize a suit for invasion of privacy.

lies at common law," [3] is clear and unequivocal. The *Henry* court left it to the legislature to provide for an actionable right of privacy if it so desired.[4] To this date the legislature has not shown any such desire, and *Henry* stands as the only existing Rhode Island authority on the right of privacy.

The First Circuit, in Mason v. American Emery Wheel Works, 241 F.2d 906, cert. denied, 355 U.S. 815, 78 S.Ct. 17, 2 L.Ed.2d 32 (1957), has taken the position that under certain circumstances an obsolete and outdated state decision may be disregarded by a federal court sitting in a diversity action:

> "Of course it is not necessary that a case be explicitly overruled in order to lose its persuasive force as an indication of what the law is. A decision may become so overloaded with illogical exceptions that by erosion of time it may lose its persuasive or binding force even in the inferior courts of the same jurisdiction. And where . . . the Supreme Court of Mississippi, twenty or thirty years ago, applied an old rule which has since been generally discredited elsewhere, it is relevant to consider what the Supreme Court of Mississippi has subsequently said on the point." At p. 909.

Applying the *Mason* test to the instant case, the court perceives a definite trend in other jurisdictions toward the recognition, by statute or at common law, of a compensable right of privacy. However, this trend is by no means unanimous, and it clearly falls short of a general discrediting of the *Henry* principle that invasion of privacy is not actionable *at common law*.[5] Nor has there been any indication from the Rhode Island Supreme Court that it would overrule *Henry* if a case in point were to come before

it today. It must be concluded that the set of circumstances presently before the court lacks the necessary substance to justify a holding that the *Henry* case has lost its "persuasive force as an indication of what the law is" in Rhode Island. The court finds that the law of the state of Rhode Island does not at the present time recognize the right of privacy.

The court will now consider the choice of law question. A federal court in a diversity of citizenship case is governed by the conflict of laws rules of the state in which it sits. Order of United Commercial Travelers of America v. Meinsen, 131 F.2d 176 (8 Cir. 1942); Griffin v. McCoach, 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941); Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Pink v. A.A.A. Highway Express, Inc., 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941); Erie R. Co. v. Tompkins, *supra*. Rhode Island choice of law principles were revised and redefined in the 1968 case of Woodward v. Stewart, 104 R.I. 290, 243 A.2d 917. This court, commenting on the *Woodward* case in Tiernan v. Westext Transport, Inc., 295 F.Supp. 1256 (1969), stated: "The importance of *Woodward* is . . . its adoption of a defined but flexible methodology of choice of laws. As this court perceives that methodology, it requires a four-step analysis: (1) what factual contacts are there with the states whose laws are alleged to conflict; (2) what is the nature of the conflict between the laws of those states whose contacts are minimally sufficient constitutionally to allow application of their laws; (3) what are the interests to be considered in choosing the applicable law; (4) weighing those interests,

3. Henry v. Cherry & Webb, *supra*, 30 R.I. at p. 14, 73 A. 97.

4. Id., p. 37, 73 A. 97.

5. Several jurisdictions have rather recently *denied* that a right of privacy exists at common law. See Milner v.

Red River Valley Publishing Co. (Tex. Civ.App., 1952), 249 S.W.2d 227; Yoeckel v. Samonig, 272 Wis. 430, 75 N.W. 2d 925 (1956); Brunson v. Ranks Army Store, 161 Neb. 519, 73 N.W.2d 803 (1955); Gautier v. Pro-Football, Inc., 304 N.Y. 354, 107 N.E.2d 485 (1952).

what law should be applied." At p. 1262.

## STEP 1

In the instant case, it is alleged that every state in the union has some factual contact with the controversy, in that defendant's advertisements were mailed to all bowling alleys in the United States. In addition, Rhode Island is both the forum state and the state of residence of the plaintiff, Delaware is the state of incorporation of the defendant, and Illinois is the home of the principal business office of defendant and the state from which the published advertising presumably originated.

## STEP 2

The possible conflicts of law, for the purposes of this motion to dismiss, are that a majority of the states involved, including Delaware and Illinois, recognize the actionable right of privacy, while at least one state, Rhode Island, does not. Rhode Island and Illinois are clearly the states having the strongest factual contacts in this case; accordingly, at all points of the conflicts analysis, infra, calling for the weighing of interests of states whose laws are in opposition, Rhode Island and Illinois will be chosen, for purposes of simplicity, as the two most prominent representatives of the two basic legal stances with respect to right of privacy.

## STEP 3

Woodward v. Stewart, *supra*, set out 104 R.I. at p. 300, 243 A.2d 917 the various interests to be defined and weighed in a tort conflict of laws case. These interests include:

(1) Predictability of results.

(2) Maintenance of interstate order.

(3) Simplification of the judicial task.

(4) Advancement of the forum's governmental interest.

(5) Application of the better rule of law.

In the circumstances of this case, certain of these interests are more relevant than others.

Predictability of results appears to be of relatively small consequence. The result of the instant case will undoubtedly be consistent with one of the following propositions: (a) that a Rhode Island resident cannot bring suit for invasion of privacy, no matter where the defendant was domiciled or where the publication occurred; or (b) that an Illinois-based corporation can be sued for invasion of privacy, regardless of the domicile of the plaintiff. The court does not feel that either of these rules would cause Rhode Island residents or Illinois corporations great difficulty in planning future conduct.

Considering next the maintenance of interstate order, the court must give due consideration to the interests of non-forum states in having their own substantive law govern this case. Illinois' *primary* interest in allowing lawsuits for invasion of privacy is undoubtedly the protection of its own citizens. An important question, though, for the purposes of this analysis is whether the Illinois prohibition of invasion of privacy exists *exclusively* for the benefit of Illinois citizens. Does Illinois have any interest in preventing a corporation principally headquartered in Illinois from printing material which tends to invade the privacy of a non-resident of Illinois, and publishing that material inside the state of Illinois and elsewhere? To the extent that Illinois public policy considers the invasion of privacy to be morally offensive, it is reasonable to perceive an Illinois interest in preventing its corporations from practicing such tortious conduct on non-residents as well as residents, especially when the conduct takes place partly in Illinois. It would hardly be in the best interests of Illinois' interstate "image" to grant to citizens of Illinois a special protected status with respect to Illinois businesses, and at the same time to withhold that status from non-residents.

On the other hand, it has been argued that a rule of law which subjected Illinois corporations to attack from out of state would operate to the detriment of Illinois' economic interest in maintaining a free and attractive business climate. However, given that an Illinois corporation is clearly accountable for an invasion of the privacy of an Illinois resident, and given that a majority of the remainder of the states protect their citizens from invasions of privacy, it is difficult to imagine that the Illinois business climate as it exists under the present law would be damaged by a holding that, under circumstances such as are present in the instant case, an Illinois corporation will be liable for an invasion of the privacy of a resident of a "minority" state.

The third interest to be weighed under *Woodward* is simplification of the judicial task. Only in those cases in which foreign law is either very complex or very obscure is simplification of the judicial task entitled to very serious consideration. Where, as here, the elements of the conflicting laws are simple and ascertainable, this interest factor cannot be of great importance.

Determination of the governmental interest of the forum state, Rhode Island, may be facilitated by an examination of the circumstances of Rhode Island's non-recognition of the right of privacy. Rhode Island last rejected the right of privacy in the *Henry* case in 1909. Since then Rhode Island case law has been entirely silent on the subject, and the state legislature has likewise failed to enact a statute regarding the right of privacy. The lack of case law may be a reflection of the fact that potential litigants have recognized the inviolability of *Henry*, and have therefore stayed out of the courts, or it may be that relatively few fact situations of the type contemplated by *Henry* have sprung up over the years. Without speculating as to facts which are not before it and could never be proven, the court is inclined to think that the right of privacy has not been a burning legal issue in Rhode Island since 1909, and it imagines that the *Henry* case has not received much thought or attention since it was originally decided. On the other hand, the silence of the legislature might be said to be a ratification of *Henry*, since *Henry* specifically stated that the legislature could enact a statute recognizing the right of privacy if it chose to do so. Whether the absence of any statute on the books concerning the right of privacy is such a ratification, or is merely the result of legislative indifference and inertia, is not a question upon which this court can ultimately pass.

The above discussion merely addresses itself to the strength of Rhode Island's anti-privacy "policy." Assuming that such a policy may reasonably be said to have an affirmative, deliberate existence, the court turns to the question of Rhode Island's interest, as forum state, in applying its own law. The court takes notice that existing scholarship on conflict of laws in right of privacy cases has placed great emphasis on the domicile of the plaintiff, attributing to the state of plaintiff's domicile an almost overwhelming interest in having its law control the litigation.[6] However, virtually none of this scholarship has contemplated the situation wherein the plaintiff's home state does not recognize the right of privacy, while the defendant's state does. If Rhode Island law recognized the tort of invasion of privacy, a strong state interest in the application of that law for the protection of Rhode Island residents would attach to such recognition. Given that Rhode Island *rejects* the right of privacy, the state interest in the protection of Rhode Island resident-plaintiffs disappears entirely. Any Rhode Island interest in *not* allowing one of its residents to seek relief for invasion of privacy must run in favor of the potential defendant. In the instant case, where the defendant is an Illinois-based corporation doing business in Rhode Island, the only Rhode Island

6. See Note—The Choice of Law in Multistate Defamation and Invasion of Privacy: An Unsolved Problem, 60 Harv.L. Rev. 941 (1947).

interest served by dismissing plaintiff's case would be the promotion of a free and open business climate for visiting corporations.

The final question to be considered is which of the conflicting rules of law is the better one. For the answer the court only has to note the steady trend toward recognition of the right of privacy by jurisdictions across the country ever since the elements of the right were first articulated by Warren and Brandeis in 1890.[7] Today, with population, communications and technology continuing their rapid expansion, the need of individual citizens for protection from unwarranted invasions of privacy can scarcely be denied. The court feels that the right of privacy is destined for universal recognition, and it applauds this destiny as founded in the most basic concepts of human rights. For the purposes of this conflict of laws analysis, the Illinois law—recognition at common law of the tort of invasion of privacy—must be deemed the better rule of law.

## STEP 4

■ The weighing of interests in this case is a sensitive problem, in that the Court must weigh a relatively weak Rhode Island interest in barring plaintiff's action against, since no Illinois plaintiff is involved, a perhaps equally weak Illinois interest in sustaining the lawsuit. A closer look at the exact nature of the alleged tort may help to put the interests in focus. The alleged injury was the result of conduct consisting of (1) the preparation of advertising material in Illinois, (2) the publication of said material in several states including Illinois and Rhode Island, and (3) the reading of said material by the plaintiff and others, causing embarrassment and humiliation to the plaintiff.[8] One will note that step (2) of the tort-comprising conduct, the publication, took

place in a number of different states. While not necessarily suggesting that each publication constituted or gave rise to a different tort, the court points out that the publication component of defendant's conduct can be separated into a number of parts, identical save for their contacts with different states. The court feels that each publication must be viewed separately *for the purpose* of deciding whether or not to dismiss plaintiff's action. If the defendant published in Illinois, and if that publication alone, given all the rest of the facts of the case, would give rise to a cause of action, then the *expansion* of defendant's tortious conduct through an *additional* publication in Rhode Island should not be allowed to shift the balance of interests to Rhode Island in such a way as to defeat plaintiff's case. The patent unfairness of permitting an action for invasion of privacy with publication in two states to fail, while the same action, with publication in only one of the states, would succeed, is obvious. The necessity of avoiding such a result in the instant case demands that the court consider the following narrow question: Disregarding defendant's publication in Rhode Island, and all the interests arising out of that publication, should plaintiff's action be dismissed? If the Rhode Island publication is disregarded, the Rhode Island interest in promoting a free business climate by permitting such publications becomes irrelevant. The remaining interests are clearly weighted in favor of Illinois, and the court finds that Illinois law must apply to a portion of the facts sufficient to warrant the denial of defendant's motion.

The above weighing of interests is sufficient for the purpose of deciding whether to dismiss plaintiff's action at this time. However, to the extent that the decision depends on an exclusion from consideration of the Rhode Island

---

7. Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193.

8. The court finds little merit in academic discussions of the exact moment or stage of the conduct at which an invasion of

privacy takes place or is completed, and it notes that such approaches have been generally discredited. The above breakdown, it may be seen, is undertaken for a different purpose.

publication, plaintiff would be barred from presenting evidence of injury resulting from such publication. The court thinks it appropriate to negate or affirm that dependency by undertaking another weighing of interests, this time incorporating the *entire* factual picture and giving full credit to the Rhode Island interests outlined supra.

After due deliberation, the court does not feel that there is any basis for proclaiming the aggregate interests of either of the two states, Rhode Island and Illinois, to be superior or inferior to those of the other. Looking to *Woodward* for a "tie-breaking" procedure, the court finds it in the interest factor labeled "better rule of law." The court determined, at p. 6, supra, that the Illinois rule was the better one. The Illinois common law, which recognizes the tort of invasion of privacy, will govern this litigation, and the plaintiff will be allowed to present evidence of injury resulting from defendant's publication of its advertising material in Rhode Island.

Defendant's motion to dismiss is hereby denied.