John W. CARSON, d/b/a Johnny
Carson, Appellant,

v.

NATIONAL BANK OF COMMERCE
TRUST AND SAVINGS, a corp.,
et al., Appellees.

No. 73–1187.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1973.

Decided July 30, 1974.

Richard P. Nelson, Lincoln, Neb., for appellant.

Robert J. Routh, Lincoln, Neb., for appellee.

Before LAY and BRIGHT, Circuit Judges, and EISELE,* District Judge.

PER CURIAM.

This case is before the Court upon appeal taken pursuant to Rule 54(b) of the Federal Rules of Civil Procedure from an order granting summary judgment in favor of defendants on the first count of a two-count complaint.

The count which was dismissed was based on diversity of citizenship and alleged that defendants, in advertising a travel tour, used the name and image of the plaintiff without his permission, thereby damaging him.[1]   The District

---

* G. THOMAS EISELE, District Judge, Eastern District of Arkansas, sitting by designation.

1. The pertinent part of the complaint states:
The plaintiff, John W. Carson, is doing business as Johnny Carson. Said plaintiff, through great expenditures of time, talent, and effort, has become and is a public figure whose name and image have acquired substantial commercial value. Plaintiff thereby has acquired a substantial property right in the use of his image and name.

Court granted summary judgment and dismissed the count on the ground that, under Nebraska law, it failed to state a claim upon which relief could be granted.

The facts are undisputed. Defendants, a bank and its wholly owned subsidiary travel agency, placed an advertisement bearing the name and picture of Mr. Carson, the well-known television personality and nightclub performer, in several newspapers and in a pamphlet distributed to bank customers. The advertisement concerned a travel tour to Las Vegas organized by defendant Travel Unlimited, Inc., which was called "Nebraskan's Johnny Carson Tour of Las Vegas." Mr. Carson was to be performing at a Las Vegas nightclub during the time scheduled for the tour, and tickets to his show were included in the tour package. Mr. Carson did not approve the use of his name and photograph, nor was he connected in any way with the travel venture.

■ In cases predicated on 28 U.S.C. § 1332, the federal courts must apply the law of. the state wherein the United States District Court is located. Here, the applicable principles must, therefore, be determined from an examination of the law of the State of Nebraska. The District Court, after examining that law, determined that Count I of the complaint failed to state a claim upon which relief could be granted. The only issue on appeal is whether the trial court was correct in that interpretation of Nebraska law.

■ For many years the rule of this Circuit in reviewing the decision of a United States District Judge on a question of state law was that his conclusion, if a permissible one, was binding on this Court on appeal. H. K. Porter Co. v. Wire Rope Corporation of America, Inc., 367 F.2d 653 (8th Cir. 1966). In 1973, in Luke v. American Family Mutual Insurance Co., 476 F.2d 1015 (8th Cir. 1973), the rule was changed. In this Circuit now, as in most others, the rule is that "great weight" is to be accorded to the District Judge's determination of local law, although the Circuit Court is not to be bound by it. 476 F.2d 1015, 1019.

We therefore have undertaken our own review of Nebraska law, and particularly the case of Brunson v. Ranks Army Store, 161 Neb. 519, 73 N.W.2d 803 (1955). This case, which was ably briefed by the parties, formed the basis for the District Court's conclusion that plaintiff's first cause of action did not state a claim upon which relief could be granted.

Plaintiff Brunson was an actor who was hired by Ranks Army Store to reenact the Brinks armed robbery as a publicity device. The Store failed to warn the local police of the planned reenactment, and Mr. Brunson was arrested and jailed during the staged robbery. Thereafter, the Store ran advertisements in local newspapers setting forth the story of Brunson's arrest and incarceration, using Brunson's name and picture. Brunson sued the Store charging in one count that his right to privacy,

The defendant, Travel Unlimited, Inc., is a wholly owned subsidiary of the defendant, National Bank of Commerce Trust and Savings; the defendant Travel Unlimited, Inc., is engaged in business as a travel agency; the defendant, National Bank of Commerce Trust and Savings Association operates a department known as MasterCharge; that said defendants jointly and individually engaged in the solicitation of business and in the promotion of a travel tour by causing to be widely circulated and publicized in the State of Nebraska and surrounding states a "Nebraskan's Johnny Carson Tour of Las Vegas"; that said tour has been publically [sic] advertised in various newspapers and by direct mailings; that as a part of the advertising for said tour, the defendants, jointly and individually, have used the picture and the name of the plaintiff, Johnny Carson, without his prior knowledge, his permission or consent; and that said advertising is a solicitation for a commercial venture with the intention of making a profit.

As a proximate result of the aforesaid use of the image and name of plaintiff, without his prior knowledge, permission or consent, said plaintiff has suffered damages in the sum of $125,000, no part of which has been paid.

Joint Appendix, pp. 1–2.

which he had not waived, was violated by the use of the picture and story without his consent and he had thereby been subjected to ridicule, embarrassment, and humiliation. The Nebraska Supreme Court affirmed the lower court's dismissal of the action, stating:

It will be observed that the plaintiff's second cause of action is based on the doctrine of the right of privacy which is defined in 77 C.J.S. Right of Privacy § 1, p. 396, as follows: "The 'right of privacy', as the term is employed with respect to the determination of whether a cause of action in damages exists for an unwarranted invasion of such right or whether it may be protected by injunctive relief, may be defined as the right of an individual * * * to be free from unwarranted publicity, or to live without unwarranted interference (interference) by the public about matters with which the public is not necessarily concerned, or to be protected from any wrongful intrusion into an individual's private life which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

Section 49–101, R.R.S.1943, provides: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the Legislature of this state, is adopted and declared to be law within the State of Nebraska."

The doctrine of the right of privacy was not recognized or enforced in the ancient English common law. See Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 N.E. 442, 59 L. R.A. 478, 89 Am.St.Rep. 828; Judevine v. Benzies-Montanye Fuel & Warehouse Co., 222 Wis. 512, 269 N.W. 295, 106 A.L.R. 1443; Milner v. Red River Valley Pub. Co., Tex.Civ. App., 249 S.W.2d 227; Wilson v. Brown, 189 Misc. 79, 73 N.Y.S.2d 587. There are numerous cases to the same effect.

Our research develops no Nebraska case holding that this court has in any form or manner adopted the doctrine of the right of privacy, and there is no precedent in this state establishing the doctrine. Nor has the Legislature of this state conferred such a right of action by statute. We submit that if such a right is deemed necessary or desirable, such right should be provided for by action of our Legislature and not by judicial legislation on the part of our courts. This is especially true in view of the nature of the right under discussion, under which right not even the truth of the allegations is a defense. We therefore hold that the action of the trial court in sustaining the defendant's demurrer to plaintiff's action based on the right of privacy was correct and needs no further comment.

73 N.W.2d 803, 806.

Plaintiff seeks to avoid this case in two ways. First, he argues that *Brunson* does not control this case because his first cause of action is not a "privacy" action; it is a "misappropriation action". Secondly, even if *Brunson* does control the case, it no longer states the law of Nebraska in regards to the right to privacy.

■ Brunson, argues plaintiff here, sought damages not for his loss of the opportunity to sell his name for commercial purposes, but for the mental suffering he underwent as a result of the revelation of an embarrassing incident, whereas Carson (mindful perhaps of the *Brunson* case) has carefully refrained from mentioning "privacy" in his complaint and has argued that he seeks damages for the misappropriation of a "valuable property right". Nonetheless, the Court believes that whether the right for which plaintiff seeks protection is denominated his right to privacy or his "right to pblicity", as plaintiff has characterized his first cause of action, it stems from Court recognition that an individual has the right to control the use of his own name and image and the publication of information about himself. If that right is conceded, sev-

eral distinct causes of action may arise from it, depending upon the particular conditions: if one's pursuit of his own private activities is interfered with (the tort of "intrusion"); if intimate details of one's personal life are made public; if publicity places one in a false light in the public eye; and, finally, if commercial use is made of one's name and image without consent. Prosser, Privacy, 48 Cal.L.Rev. 383, 389 (1960). All these actions stem from the initial recognition of a right to control the use of one's own name and image, which the Nebraska Supreme Court explicitly rejected in *Brunson*. Plaintiff's characterization of his action as one seeking damages for "misappropriation" cannot serve as a means to escape the rule of the *Brunson* case. If the Nebraska court had intended to recognize an action for "missappropriation", *Brunson* would certainly have been an appropriate place for some indication of such intention, since Brunson, like Carson, alleged that his picture and name had been used without his permission in an advertising scheme. (Brunson had agreed that his picture could be used in connection with the enactment of the robbery, but had not contracted for the use of his name and picture in connection with his actual arrest and incarceration.)

■ Such a result might seem anomalous today where the vast majority of states have recognized a "right to privacy" by court decision or statute, and where the plaintiff's first cause of action, in most jurisdictions, would clearly state a claim upon which relief could be granted.[2] However, the fact that Nebraska has followed a different course from that of other states is not reason for this Court to determine that Nebraska would now wish to judicially change its law. This Court must look to Nebraska law as it is and not as one might believe it ought to be.

Plaintiff argues that we need not slavishly adhere to the last ruling of the Nebraska Supreme Court in a similar case, but should determine what the present Supreme Court would do if faced with this case now.[3] We have done so, but we believe that the best method of ascertaining what the Nebraska court would do with this case is to examine what it has done with similar cases in the past. The *Brunson* case has not been overruled, nor has any subsequent case we have found cast any doubt upon its continuing authority. *See* Gravina v. Brunswick Corp., 338 F.Supp. 1 (D.R.I. 1972).

Legislative development subsequent to *Brunson* reinforce this interpretation of its validity. *See* L.B. 1464, introduced in the 1972 legislature, to create a right of privacy, which, in Section 1 refers to the *Brunson* holding. The bill was not advanced. *See* Nebraska Legislative

2. Naturally we do not concern ourselves with subsidiary legal questions which could arise if plaintiff's basic position were accepted. Particularly we do not want to imply that had we concluded that plaintiff's complaint stated a cause of action under Nebraska law, it would necessarily follow that he would be entitled to relief under the particular facts that might have been established. We note that Mr. Carson was appearing at a nightclub in Las Vegas and that the defendants' tour included tickets to his show. Whether he may have impliedly authorized certain uses of his name in advertising his nightclub appearances, or waived his right to object thereto, and whether defendants' brochure was among those uses would certainly be issues for further legal and, perhaps, factual determination even if the basic theory of

plaintiff's cause of action were recognized in Nebraska. If the Supreme Court of Nebraska were to recognize a misappropriation theory as urged by plaintiff, it could flesh out and limit such right in a variety of manners either consistent with, or at variance with, the law as developed by other states. The complexity of the matter may be one of the reasons that the Supreme Court of Nebraska has indicated that this particular type of problem is best left for legislative determination.

3. In our determination we are guided by the principles enunciated in Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1940), and Peterson v. U-Haul, 409 F.2d 1174 (8th Cir. 1969).

Journal, Apr. 5, 1972. And again we note that the learned District Judge, familiar with the law of Nebraska, has concluded that *Brunson* states the current law of Nebraska. We conclude that his interpretation was, and is, correct.

Affirmed.