MARCIA MILLER, APPELLANT AND CROSS-APPELLEE, V. AMERICAN SPORTS COMPANY, INC., AND ROGER WILLIAM OWEN, APPELLEES AND CROSS-APPELLANTS.

467 N.W.2d 653

Filed March 29, 1991.   No. 88-841.

Richard J. Rensch for appellant.

Dennis C. Magnuson and William E. Gast, of Gast & Peters, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Upon motion of the defendants-appellees and cross-appellants, American Sports Company, Inc., and its president and owner, Roger William Owen, made at the close of all the evidence, the district court discharged the jury and dismissed plaintiff-appellant Marcia Miller's action for invasion of privacy and libel. Miller charges the district court erred in its rulings relating to the law applicable to the correction of objectionable publications and the proof of actual malice. On the other hand, American Sports and Owen assign as error the district court's disregard of the claimed failure of Miller to prove a prima facie case under either of the theories she pled. Inasmuch as the record supports defendants' claim of error, we affirm without reaching the errors assigned by Miller.

Owen contacted an advertising agency, seeking a model to pose and be photographed with some of the products American Sports manufactured and wished to promote. Miller, a young woman employed by the agency as a receptionist who had prior experience as an advertising model, volunteered to pose and be photographed without pay. Miller knew that the photographs were to be used in promoting American Sports' products at a builders' "Street of Dreams" trade show, but the evidence concerning what she was told as to other uses which might be made of the photographs is conflicting. While Miller testified

she understood that the photographs would be used only in connection with the Street of Dreams promotion, she admitted she knew that she could have so restricted their use, but did not.

The first of Miller's photographs appears as a 6- by 8-inch rectangle on the front of an 11- by 25$^1$/$_2$-inch brochure folded into thirds which also pictures and describes American Sports' whirlpool bathtubs. The Miller photograph is in full color and is the only thing on the front page of the brochure other than American Sports' name and logogram, which are in white letters against a black background. This photograph displays a lateral view of Miller seated in a water-filled oval tub with her head resting against one end of the vessel. In addition to her head and face, the photograph shows the right side of Miller's neck; all of the top of her right arm, resting on the inner rim of the tub; the top of approximately the lower three-fourths of her left arm, also resting on the inner rim; and her bent right knee, together with approximately the lower one-fourth of her thigh and upper one-fifth of her lower leg. The remainder of her body is hidden by the tub and its swirling contents.

The second photograph, also in color, appears on the last page of the same brochure. It is a 2$^1$/$_2$- by 1$^1$/$_2$-inch oval depicting a frontal view of Miller seated on the outer rim of the tub. She is smiling and wears a lavaliere and a ring on the third finger of her left hand, which grasps a bath towel wrapped around her body. The towel extends from just above the upper breastline to slightly below midthigh on her bent right leg and slightly below groin level on her bent left leg. The photograph omits approximately one-fourth of Miller's lower right leg and foot and one-fifth of her lower left leg and foot. In addition to appearing as part of the brochure, the first photograph was displayed at the Street of Dreams promotion as a blowup "larger . . . than [a] chalkboard" of undisclosed dimensions.

Miller makes no complaint with respect to those two photographs nor to the uses made of them. She does, however, take offense at the third photograph and the use made of it. This photograph, a 6- by 2$^3$/$_8$-inch top-rounded rectangular reproduction of the second photograph described above, adding only the front view of the remainder of Miller's legs and her feet, appears as part of another American Sports

promotion, a leaflet directed at industrial manufacturers. This single-sheet advertisement measures $9^{1}/_{4}$ by $4^{3}/_{8}$ inches when folded and opens into a $9^{1}/_{4}$- by $12^{7}/_{8}$-inch document with print on both sides. In addition to showing and describing whirlpools, spas, and hot tubs, the leaflet pictures refrigerators generally shaped and labeled as bottles of "popular soft drink & beer brands," on and around which are portrayed three young fully clothed female models other than Miller and one young completely dressed male model. Miller's color photograph is located against a black background on the left half of the folded leaflet under the centered word "SEX" printed in pink, which word, when the leaflet is opened, becomes part of the phrase "SEE US NEXT TIME YOU BUILD OR BUY" printed in pink and brown letters across the top of the front and back of the document. The only thing which can be seen on the right half of the folded leaflet, other than American Sports' vertical name in brown letters against a black background at the right edge of the document, is the left side view, against a white background, of approximately the upper one-sixth of one of the other three female models described above. Under Miller's photograph appear, in white against a black background, American Sports' logogram, the words "quality first," and in larger letters under them, the right one-third of an "E" followed by "R'S DIR" and the right one-fourth of an "O" followed by an "N." Thus, the first glance reveals that the leaflet is folded and designed to be pulled open.

The right to privacy Miller pled is founded on certain statutory provisions, and is a limited one. See *Schoneweis v. Dando*, 231 Neb. 180, 435 N.W.2d 666 (1989). In relevant part, these provisions impose liability on one who "exploits a natural person, name, picture, portrait, or personality for advertising or commercial purposes," except for

> [t]he use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property when such person has consented to the use of his or her name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof so long as such use does not

differ materially in kind, extent, or duration from that authorized by the consent as fairly construed . . . .

Neb. Rev. Stat. § 20-202 (Reissue 1987).

The uncontradicted evidence is that Miller volunteered to serve as an unpaid advertising model. Neither is there any doubt that she knew she could limit the use of the photographs if she so desired. For whatever reason, perhaps because she wanted as wide a distribution of her photographs as possible as an aid to promoting her services as a model, she elected to impose no restrictions on their use. Under those circumstances, whatever she thought the uses might be is irrelevant, for the meaning of a contract is judged objectively and not subjectively. See *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988).

Inasmuch as Miller agreed to the unremunerated and unrestricted use of her photographs to sell products, she, as a matter of law, cannot now complain that the use to which she consented invaded her privacy. See, § 20-202; *O'Brien v. Pabst Sales Co.*, 124 F.2d 167 (5th Cir. 1941), *cert. denied* 315 U.S. 823, 62 S. Ct. 917, 86 L. Ed. 1220 (1942) (football player who had consented to widespread publication of his photograph depicting him in throwing posture could not complain that his privacy had been invaded by use of the photograph on calendar adjacent to photographs of glass and beer bottle with words "Pabst Breweries, Blue Ribbon Export Beer" and "Pabst Blue Ribbon Beer," thus falsely implying he used or endorsed product); *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 262 P.2d 808 (1953) (privacy of one consenting to publication of photograph in national magazines not invaded); *Brunson v. Ranks Army Store*, 161 Neb. 519, 73 N.W.2d 803 (1955) (contract not breached by arrest resulting from actor's agreed-upon portrayal of robber in an advertising scheme).

That leaves the matter of libel. The first rule of the law of libel is that the communication which is claimed to be defamatory must be viewed in the context of the entire publication of which the communication is a part and that the entire publication must be considered as a whole. See *Houston v. Interstate Circuit*, 132 S.W.2d 903 (Tex. Civ. App. 1939) (in determining whether libelous, movie must be considered as a whole; separate scenes and sentences cannot be isolated and

independently examined). Moreover, the circumstances under which the publication was made and the character of the audience and its relationship to the subject of the publication must be taken into consideration, as well as the effect that the publication complained of may reasonably have had upon such audience. As noted in *Greyhound Secur. v. Greyhound Corp.*, 11 A.D.2d 390, 207 N.Y.S.2d 383 (1960), decided at a time when it made a difference, a statement that a lawyer is an aggressive and successful solicitor of legal business might elicit nothing but admiration from an association of salespersons and an entirely contrary reaction from a bar association.

The second rule is that it is for the trial court to determine in the first instance whether a particular publication was libelous. *Silence v. Journal Star Printing Co.*, 201 Neb. 159, 266 N.W.2d 533 (1978). Contrary to Miller's contention, there is nothing in the publication of the third photograph which reasonably suggests that she is promoting or selling herself for another's sexual gratification. She is not identified in any fashion, nor does the folder disclose how she might be contacted, two items of information which would be a necessary part of any advertisement of one's availability as a sexual partner. The fact is that the pamphlet is pitched not toward those seeking sexual gratification, but toward those who would purchase various types of bathtubs and unusual refrigerators. The brochure is a familiar sales tool which does nothing more than attempt to make American Sports' products appear more desirable by associating them with young people. The publication of which the third photograph is a part is of such a nature as to render the photograph not libelous as a matter of law.

Moreover, even if the third photograph were libelous, Miller, as the analysis of the privacy issue demonstrates, consented to its publication. Such consent provides an absolute defense to an action for libel. See *Hellesen v. Knaus Truck Lines*, 370 S.W.2d 341 (Mo. 1963) (employee who agreed through union contract that employer would provide union with copy of notice warning employee of impending discharge because of dishonesty consented to publication and thus could not recover for libel). See, also, *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331 (Tex. App. 1986).

Indeed, this court's observation with respect to the suddenly-turned-shy actor in *Brunson v. Ranks Army Store, supra*, has equal application to Miller as the suddenly-turned-shy would-be advertising model. "Generally, actors and actresses seek publicity and often adopt various and sundry ways of securing such notoriety as will attract attention to them. This is considered their stock in trade." *Id.* at 526, 73 N.W.2d at 807. In short, Miller received exactly that for which she bargained and may not now complain of the benefit of that commercial transaction.

While the trial court erred in not finding that Miller failed to prove a prima facie case of either invasion of privacy or libel, its judgment was nonetheless correct. Since a correct result will not be set aside merely because it is based upon incorrect reasoning, *In re Interest of G.G. et al., ante* p. 306, 465 N.W.2d 752 (1991), the judgment is affirmed.

AFFIRMED.