Elli LAKE, et al., pet., Appellants,

v.

WAL–MART STORES, INC., et al., Respondents.

No. C7–97–263.

Supreme Court of Minnesota.

July 30, 1998.

Keith L. Miller, Miller, Norman & Associates, Ltd., Moorhead, for appellants.

Richard L. Pemberton, Pemberton, Sorlie, Sefkow, Rufer & Kershner, Fergus Falls, for respondents.

Douglas A. Hedin, Minneapolis, amicus curiae National Employment Lawyer Ass'n.

Michael J. Ford, Corrine L. Everson, St. Cloud, amicus curiae Minnesota Defense Lawyers Ass'n.

Steve G. Heikens, Minneapolis, amicus curiae Minnesota Trial Lawyers Ass'n.

John P. Borger, Faegre & Benson, Mark Anfinson, Minneapolis, amicus curiae Minnesota Broadcasters Ass'n and Minnesota Newspaper Ass'n.

## OPINION

BLATZ, Chief Justice.

Elli Lake and Melissa Weber appeal from a dismissal of their complaint for failure to state a claim upon which relief may be granted. The district court and court of appeals held that Lake and Weber's complaint alleging intrusion upon seclusion, appropriation, publication of private facts, and false light publicity could not proceed because Minnesota does not recognize a common law tort action for invasion of privacy. We reverse as to the claims of intrusion upon seclusion, appropriation, and publication of private facts, but affirm as to false light publicity.

Nineteen-year-old Elli Lake and 20-year-old Melissa Weber vacationed in Mexico in March 1995 with Weber's sister. During the vacation, Weber's sister took a photograph of Lake and Weber naked in the shower together. After their vacation, Lake and Weber

brought five rolls of film to the Dilworth, Minnesota Wal–Mart store and photo lab. When they received their developed photographs along with the negatives, an enclosed written notice stated that one or more of the photographs had not been printed because of their "nature."

In July 1995, an acquaintance of Lake and Weber alluded to the photograph and questioned their sexual orientation. Again, in December 1995, another friend told Lake and Weber that a Wal–Mart employee had shown her a copy of the photograph. By February 1996, Lake was informed that one or more copies of the photograph were circulating in the community.

Lake and Weber filed a complaint against Wal–Mart Stores, Inc. and one or more as-yet unidentified Wal–Mart employees on February 23, 1996, alleging the four traditional invasion of privacy torts—intrusion upon seclusion, appropriation, publication of private facts, and false light publicity. Wal–Mart denied the allegations and made a motion to dismiss the complaint under Minn. R. Civ. P. 12.02, for failure to state a claim upon which relief may be granted. The district court granted Wal–Mart's motion to dismiss, explaining that Minnesota has not recognized any of the four invasion of privacy torts. The court of appeals affirmed.

■ Whether Minnesota should recognize any or all of the invasion of privacy causes of action is a question of first impression in Minnesota.[1] The Restatement (Second) of Torts outlines the four causes of action that comprise the tort generally referred to as invasion of privacy. Intrusion upon seclusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns * * * if the intrusion would be highly offensive to a reasonable person."[2] Appropriation protects an individual's identity and is committed when one "appropriates to his own use or benefit the name or likeness of another."[3] Publication of private facts is an invasion of privacy when one "gives publicity to a matter concerning the private life of another * * * if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."[4] False light publicity occurs when one "gives publicity to a matter concerning another that places the other before the public in a false light * * * if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[5]

## I.

■ This court has the power to recognize and abolish common law doctrines.[6] The common law is not composed of firmly fixed rules. Rather, as we have long recognized, the common law:

is the embodiment of broad and comprehensive unwritten principles, inspired by natural reason, an innate sense of justice, adopted by common consent for the regulation and government of the affairs of men. It is the growth of ages, and an examination of many of its principles, as enunciated and discussed in the books, discloses a constant improvement and development in keeping with advancing civilization and new conditions of society. Its guiding star has always been the rule of right and wrong, and in this country its principles demonstrate that there is in fact, as well as in theory, a remedy for all wrongs.[7]

1. Previous cases have addressed the right to privacy torts only tangentially, in dicta. *See Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 28 (1996); *Hendry v. Conner*, 303 Minn. 317, 319, 226 N.W.2d 921, 923 (1975).

2. Restatement (Second) of Torts, § 652B (1977).

3. *Id.* at § 652C.

4. *Id.* at § 652D.

5. *Id.* at § 652E.

6. *See Anderson v. Stream*, 295 N.W.2d 595 (Minn. 1980) (abolishing parental immunity); *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975) (abolishing state tort immunity).

7. *State ex rel. City of Minneapolis v. St. Paul, M. & M. Ry. Co.*, 98 Minn. 380, 400–01, 108 N.W. 261, 268 (1906) (citations omitted).

As society changes over time, the common law must also evolve:

> It must be remembered that the common law is the result of growth, and that its development has been determined by the social needs of the community which it governs. It is the resultant of conflicting social forces, and those forces which are for the time dominant leave their impress upon the law. It is of judicial origin, and seeks to establish doctrines and rules for the determination, protection, and enforcement of legal rights. Manifestly it must change as society changes and new rights are recognized. To be an efficient instrument, and not a mere abstraction, it must gradually adapt itself to changed conditions.[8]

To determine the common law, we look to other states as well as to England.[9]

The tort of invasion of privacy is rooted in a common law right to privacy first described in an 1890 law review article by Samuel Warren and Louis Brandeis.[10] The article posited that the common law has always protected an individual's person and property, with the extent and nature of that protection changing over time. The fundamental right to privacy is both reflected in those protections and grows out of them:

> Thus, in the very early times, the law gave a remedy only for physical interference with life and property, for trespass *vi et armis*. Then the "right to life" served only to protect the subject from battery in its various forms; liberty meant freedom from actual restraint; and the right to property secured to the individual his lands and his cattle. Later, there came a recognition of a man's spiritual nature, of his feelings and his intellect. Gradually the scope of these legal rights broadened; and now the right to life has come to mean the right to enjoy life,—the right to be let alone; the right to liberty secures the exercise of extensive civil privileges; and the term "property" has grown to comprise every form of possession—intangible, as well as tangible.[11]

Although no English cases explicitly articulated a "right to privacy," several cases decided under theories of property, contract, or breach of confidence also included invasion of privacy as a basis for protecting personal violations.[12] The article encouraged recognition of the common law right to privacy, as the strength of our legal system lies in its elasticity, adaptability, capacity for growth, and ability "to meet the wants of an ever changing society and to apply immediate relief for every recognized wrong."[13]

The first jurisdiction to recognize the common law right to privacy was Georgia.[14] In *Pavesich v. New England Life Ins. Co.*, the Georgia Supreme Court determined that the "right of privacy has its foundation in the instincts of nature," and is therefore an "immutable" and "absolute" right "derived from natural law."[15] The court emphasized that the right of privacy was not new to Georgia law, as it was encompassed by the well-established right to personal liberty.[16]

Many other jurisdictions followed Georgia in recognizing the tort of invasion of privacy, citing Warren and Brandeis' article and *Pavesich*. Today, the vast majority of jurisdictions now recognize some form of the right to privacy. Only Minnesota, North Dakota, and Wyoming have not yet recognized any of the four privacy torts. Although New York and Nebraska courts have declined to recognize a common law basis for the right to privacy and instead provide statutory protec-

---

8. *Tuttle v. Buck*, 107 Minn. 145, 148–49, 119 N.W. 946, 947 (1909).

9. *See Shaughnessy v. Eidsmo*, 222 Minn. 141, 23 N.W.2d 362 (1946), *Jacobs v. Jacobs*, 136 Minn. 190, 161 N.W. 525 (1917); *Seymour v. McAvoy*, 121 Cal. 438, 53 P. 946, 947 (1898).

10. Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L.Rev. 193 (1890).

11. *Id.* at 193.

12. *Id.* at 203–10.

13. *Id.* at 213, n. 1.

14. 122 Ga. 190, 50 S.E. 68 (1905).

15. *Id.* 50 S.E. at 69–70.

16. *Id.* at 70.

tion,[17] we reject the proposition that only the legislature may establish new causes of action. The right to privacy is inherent in the English protections of individual property and contract rights and the "right to be let alone" is recognized as part of the common law across this country. Thus, it is within the province of the judiciary to establish privacy torts in this jurisdiction.

Today we join the majority of jurisdictions and recognize the tort of invasion of privacy. The right to privacy is an integral part of our humanity; one has a public persona, exposed and active, and a private persona, guarded and preserved. The heart of our liberty is choosing which parts of our lives shall become public and which parts we shall hold close.

■ Here Lake and Weber allege in their complaint that a photograph of their nude bodies has been publicized. One's naked body is a very private part of one's person and generally known to others only by choice. This is a type of privacy interest worthy of protection. Therefore, without consideration of the merits of Lake and Weber's claims, we recognize the torts of intrusion upon seclusion, appropriation, and publication of private facts. Accordingly, we reverse the court of appeals and the district court and hold that Lake and Weber have stated a claim upon which relief may be granted and their lawsuit may proceed.

## II.

■ We decline to recognize the tort of false light publicity at this time. We are concerned that claims under false light are similar to claims of defamation, and to the extent that false light is more expansive than defamation, tension between this tort and the First Amendment is increased.

False light is the most widely criticized of the four privacy torts and has been rejected by several jurisdictions.[18] Most recently, the Texas Supreme Court refused to recognize the tort of false light invasion of privacy because defamation encompasses most false light claims and false light "lacks many of the procedural limitations that accompany actions for defamation, thus unacceptably increasing the tension that already exists between free speech constitutional guarantees and tort law." [19] Citing "numerous procedural and substantive hurdles" under Texas statutory and common law that limit defamation actions, such as privileges for public meetings, good faith, and important public interest and mitigation factors, the court concluded that these restrictions "serve to safeguard the freedom of speech." [20] Thus to allow recovery under false light invasion of privacy, without such safeguards, would "unacceptably derogate constitutional free speech." [21] The court rejected the solution of some jurisdictions—application of the defamation restrictions to false light—finding instead that any benefit to protecting nondefamatory false speech was outweighed by the chilling effect on free speech.[22]

We agree with the reasoning of the Texas Supreme Court. Defamation requires a false statement communicated to a third party that tends to harm a plaintiff's reputation.[23] False light requires publicity, to a large number of people, of a falsity that places the plaintiff in a light that a reasonable person would find highly offensive.[24] The primary difference between defamation and false light is that defamation addresses harm to reputation in the external world, while false light protects harm to one's inner self.[25] Most

**17.** *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538, 64 N.E. 442, 447 (1902); *Brunson v. Ranks Army Store*, 161 Neb. 519, 73 N.W.2d 803, 806 (1955).

**18.** *See, e.g.*, *Sullivan v. Pulitzer Broadcasting Co.*, 709 S.W.2d 475 (Mo.1986); *Renwick v. News and Observer Pub. Co.*, 310 N.C. 312, 312 S.E.2d 405 (1984); *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex.1994).

**19.** *Cain*, 878 S.W.2d at 579–80.

**20.** *Id.* at 581–82.

**21.** *Id.* at 581.

**22.** *Id.* at 584.

**23.** *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980).

**24.** Restatement (Second) of Torts, § 652E.

**25.** *See Sullivan*, 709 S.W.2d at 479.

false light claims are actionable as defamation claims; because of the overlap with defamation and the other privacy torts, a case has rarely succeeded squarely on a false light claim.[26]

Additionally, unlike the tort of defamation, which over the years has become subject to numerous restrictions to protect the interest in a free press and discourage trivial litigation,[27] the tort of false light is not so restricted. Although many jurisdictions have imposed restrictions on false light actions identical to those for defamation, we are not persuaded that a new cause of action should be recognized if little additional protection is afforded plaintiffs.

We are also concerned that false light inhibits free speech guarantees provided by the First Amendment. As the Supreme Court remarked in *New York Times Co. v. Sullivan:* "Whatever is added to the field of libel is taken from the field of free debate."[28] Accordingly, we do not want to:

> create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to nondefamatory matter.[29]

Although there may be some untrue and hurtful publicity that should be actionable under false light, the risk of chilling speech is too great to justify protection for this small category of false publication not protected under defamation.

Thus we recognize a right to privacy present in the common law of Minnesota, including causes of action in tort for intrusion upon seclusion, appropriation, and publication of private facts, but we decline to recognize the

tort of false light publicity. This case is remanded to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part.

TOMLJANOVICH, Justice (dissenting).

I respectfully dissent. If the allegations against Wal–Mart are proven to be true, the conduct of the Wal–Mart employees is indeed offensive and reprehensible. As much as we deplore such conduct, not every contemptible act in our society is actionable.

I would not recognize a cause of action for intrusion upon seclusion, appropriation or publication of private facts. "Minnesota has never recognized, either by legislative or court action, a cause of action for invasion of privacy." *Hendry v. Conner,* 303 Minn. 317, 319, 226 N.W.2d 921, 923 (1975). As recently as .1996, we reiterated that position. *See Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 28 (Minn.1996).

An action for an invasion of the right to privacy is not rooted in the Constitution. "[T]he Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'" *Katz v. United States,* 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Those privacy rights that have their origin in the Constitution are much more fundamental rights of privacy—marriage and reproduction. *See Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (penumbral rights of privacy and repose protect notions of privacy surrounding the marriage relationship and reproduction).

We have become a much more litigious society since 1975 when we acknowledged that we have never recognized a cause of action for invasion of privacy. We should be

**26.** J. Clark Kelso, *False Light Privacy: A Requiem,* 32 Santa Clara L.Rev. 783, 785–86 (1992).

**27.** For privileges against defamation claims, *see, e.g.,* Minn.Stat. § 548.06 (1996) (providing that published retraction may mitigate damages); *Johnson v. Dirkswager,* 315 N.W.2d 215 (Minn. 1982) (absolute privilege in defamation for public service or administration of justice); *Mahnke v. Northwest Publications Inc.,* 280 Minn. 328, 160 N.W.2d 1 (1968) (conditional privilege regarding public officials and candidates for office—official

must prove actual malice); *Friedell v. Blakely Printing Co.,* 163 Minn. 226, 203 N.W. 974 (1925) (privilege for communication made in good faith when publisher has an interest or duty).

**28.** 376 U.S. 254, 272, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**29.** *Time, Inc. v. Hill,* 385 U.S. 374, 389, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967).

even more reluctant now to recognize a new tort.

In the absence of a constitutional basis, I would leave to the legislature the decision to create a new tort for invasion of privacy.

STRINGER, Justice.

I join in the dissent of Justice TOMLJANOVICH.